WALLACE JOHN DIEHL, Plaintiff v. JANE HALL DIEHL, Defendant

No. COA05-416

(Filed 6 June 2006)

**1. Child Support, Custody, and Visitation— joint legal custody—decision-making authority**

The trial court abused its discretion in a child custody and support case by awarding the parties joint legal custody while simultaneously granting defendant wife primary decision making authority, and the case is remanded for further proceedings regarding the issue of joint legal custody because: (1) the findings that the parties are currently unable to effectively communicate regarding the needs of the minor children and regarding defendant's occasional troubles obtaining plaintiff's consent are not alone sufficient to support an order abrogating all decision-making authority that plaintiff would have otherwise enjoyed under the trial court's award of joint legal custody; and (2) the trial court needs to identify specific areas in which defendant is granted decision-making authority upon finding appropriate facts to justify the allocation.

**2. Child Support, Custody, and Visitation— stipulation on visitation—as agreed upon by parties**

The trial court did not err by awarding plaintiff father visitation only as agreed upon by the parties, because: (1) at the beginning of its order the trial court specifically found that plaintiff stipulated to a physical custody arrangement with defendant mother having permanent primary physical custody and plaintiff having visitation rights as agreed upon by the parties; and (2) contrary to plaintiff's assertion, nothing in *In re Custody of Stancil*, 10 N.C. App. 545 (1971), or its progeny suggests that parties may not stipulate to such an arrangement.

**3. Child Support, Custody, and Visitation— support—recalculation of obligation—equitable distribution**

The trial court was not required to recalculate plaintiff father's child support obligation in light of any equitable distribution, because: (1) an equitable distribution is done via a court proceeding and not by agreement between the parties; and (2) even assuming arguendo that the parties' settlement agreement was an equitable distribution, a prior child support award following an equitable dis-

DIEHL v. DIEHL

[177 N.C. App. 642 (2006)]

tribution need only be reconsidered upon the request of a party, and no such request was made.

4. **Child Support, Custody, and Visitation— support—average monthly gross income**

The trial court did not err in a child support case by using an average of plaintiff father's monthly gross incomes in 2001 and 2002 as a basis for finding his monthly gross income for 2003 to be $19,791.50, because: (1) plaintiff failed to preserve this issue for appellate review; (2) even if it is presumed that plaintiff preserved this issue for review, plaintiff argues on appeal only that the trial court erred when it found he had not presented adequate information as to his actual 2003 income and that the trial court's decision to average his 2001 and 2002 income improperly imputed income to him; (3) given the unreliability of plaintiff's document, it cannot be concluded under the circumstances that the trial court abused its discretion by averaging plaintiff's income from his two prior tax returns to arrive at his 2003 income; and (4) the trial court did not impute income to plaintiff as a result of voluntary unemployment or underemployment, but rather was merely attempting to determine what plaintiff actually earned in 2003.

5. **Child Support, Custody, and Visitation— support obligations—insufficient findings of fact**

Although the trial court did not err by failing to use or refer to the North Carolina Child Support Guidelines for determining plaintiff father's various child support obligations, it did err by failing to provide adequate findings of fact to support its calculation of support, because: (1) the Guidelines did not apply since the parties' combined monthly incomes in 2000, 2001, 2002, and 2003 exceeded the $20,000 monthly maximum; (2) even if the Court of Appeals adopted plaintiff's proposed 2001 and 2003 monthly income figures, he does not contest the trial court's finding as to defendant's monthly income, and combined, the two exceed the $20,000 monthly maximum; (3) when the monthly maximum contemplated by the Guidelines is exceeded, the trial court is required to order a child support based on the particular facts and circumstances of the case and not merely to extrapolate from the Guidelines; (4) although the order contains certain historical costs associated with the children, it includes no findings as to the individual costs and expenses the trial court expected to be associated with each child in the future; and (5) although the trial court did make findings regarding the parties' particular estates,

earnings, conditions, and accustomed standard of living, they were insufficient to remedy the absence of findings explaining the reasonable needs of the children.

**6. Costs— attorney fees—failure to make findings of fact**

The trial court erred by declining to award defendant mother attorney fees in a child support and custody case, and the case is remanded for entry of proper findings of fact, because the trial court made no findings related to its denial as to whether defendant acted in good faith or whether she had insufficient means to defray the expense of the suit.

Appeal by plaintiff and cross-appeal by defendant from order entered 27 September 2004, *nunc pro tunc* 29 April 2004, by Judge Alonzo Coleman in Orange County District Court. Heard in the Court of Appeals 16 November 2005.

*Lewis, Anderson, Phillips, Greene & Hinkle, PLLC, by Susan H. Lewis, for plaintiff.*

*Burton & Ellis, PLLC, by Alyscia G. Ellis, for defendant.*

GEER, Judge.

Plaintiff Wallace John Diehl appeals from a child custody and support order, arguing primarily that the trial court erred (1) by awarding the parties joint legal custody while simultaneously granting defendant Jane Hall Diehl "primary decision making authority," and (2) by making insufficient findings to justify its child support order. Defendant Jane Hall Diehl has cross-appealed from the trial court's denial of her request for attorneys' fees. We hold that the trial court's ruling regarding joint legal custody as well as its findings of fact regarding child support and attorneys' fees are insufficient and, therefore, we remand for further proceedings.

Facts

The Diehls were married in 1986 and separated in 1997. During their marriage, the couple had three children: Michael, born in 1989; Benjamin, born in 1991; and John, born in 1993. On 14 July 1998, Mr. Diehl filed a complaint for absolute divorce and joint legal custody of the minor children. Ms. Diehl filed an answer and counterclaim on 6 October 1998, seeking temporary and permanent custody and support of the minor children. The couple was granted a divorce on 21 December 1998.

DIEHL v. DIEHL

[177 N.C. App. 642 (2006)]

Through 13 October 2000, the parties executed multiple temporary agreements that settled all claims between them relating to their divorce except for prospective child support and child custody. With respect to temporary child support, the 13 October 2000 agreement required that Mr. Diehl pay $2,547.00 per month until a final order or agreement of the parties was obtained. Additionally, the agreement provided that any future permanent child support order or agreement would relate back to September 2000.

The issues of permanent child support and child custody were heard by the trial court on 27 and 29 April 2004. On 27 September 2004, the court entered an order granting primary physical custody to Ms. Diehl. With respect to legal custody, the court ordered the following:

> The parties shall share permanent joint legal custody of the minor children with [Ms. Diehl] having primary decision making authority. If a particular decision will have a substantial financial effect on [Mr. Diehl] either party may petition the Court to make the decision, if necessary.

Regarding child support, the trial court made findings as to each party's monthly gross income for 2000 through 2003, as well as to the lump sum monthly amount necessary to meet the needs of the children in each of these years. Based on these findings, the trial court ordered Mr. Diehl to begin making permanent child support payments in the amount of $4,500.00 per month and to pay $66,960.00 in back child support for the period from September 2000 through April 2003. The court also ordered that the parties pay their own costs, apparently denying Ms. Diehl's request for attorneys' fees. Both parties timely appealed to this Court.

## Custody

### A. Primary Decision-Making Authority

[1] Mr. Diehl first argues that the trial court erred by awarding Ms. Diehl "primary decision making authority," a concept not formally recognized in statutes or case law, after it had already awarded joint legal custody to both parties. The decision of a trial court as to child custody should not be upset on appeal absent a showing that the trial court abused its discretion. *Evans v. Evans*, 169 N.C. App. 358, 360, 610 S.E.2d 264, 267 (2005). Nevertheless, "the findings and conclusions of the trial court must comport with our case law regarding child custody matters." *Cantrell v. Wishon*, 141 N.C. App. 340, 342, 540 S.E.2d 804, 806 (2000).

Although not defined in the North Carolina General Statutes, our case law employs the term "legal custody" to refer generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare. *See Patterson v. Taylor,* 140 N.C. App. 91, 96, 535 S.E.2d 374, 378 (2000) (Legal custody refers to the right to make decisions regarding "the child's education, health care, religious training, and the like."); 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.2b, at 13-16 (5th ed. 2002) (Legal custody includes "the rights and obligations associated with making major decisions affecting the child's life."). This comports with the understanding of legal custody that has been adopted in other states. *See, e.g., In re Paternity of Joe,* 486 N.E.2d 1052, 1057 (Ind. Ct. App. 1985) (noting "legal custody" provided mother with right and responsibility to determine such things as the child's "education, health care, and religious training" (internal quotation marks omitted)); *Taylor v. Taylor,* 306 Md. 290, 296, 508 A.2d 964, 967 (1986) ("Legal custody carries with it the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare."). *See also, e.g.,* Ga. Code Ann. § 19-9-6 (2004) (" 'Joint legal custody' means both parents have equal rights and responsibilities for major decisions concerning the child, including the child's education, health care, and religious training . . . ."); Ind. Code § 31-9-2-67 (2003) (" 'Joint legal custody', . . . means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training.").

Here, although the trial court awarded the parties joint legal custody, the court went on to award "primary decision making authority" on all issues to Ms. Diehl unless "a particular decision will have a substantial financial effect on [Mr. Diehl] . . . ." In the event of a substantial financial effect, however, the order still does not provide Mr. Diehl with any decision-making authority, but rather states that the parties may "petition the Court to make the decision . . . ." Thus, the trial court simultaneously awarded both parties joint legal custody, but stripped Mr. Diehl of all decision-making authority beyond the right to petition the court to make decisions that significantly impact his finances. We conclude that this approach suggests an award of "sole legal custody" to Ms. Diehl, as opposed to an award of joint legal custody to the parties. *See* Reynolds, *supra* § 13.2b, at 13-16 ("If one custodian has the right to make all major decisions for the child, that person has sole 'legal custody.' ").

This Court has acknowledged that the General Assembly's choice to leave "joint legal custody" undefined implies a legislative intent to allow a trial court "substantial latitude in fashioning a 'joint [legal] custody' arrangement." *Patterson*, 140 N.C. App. at 96, 535 S.E.2d at 378. This grant of latitude refers to a trial court's discretion to distribute certain decision-making authority that would normally fall within the ambit of joint legal custody to one party rather than another based upon the specifics of the case. *See, e.g., MacLagan v. Klein*, 123 N.C. App. 557, 565, 473 S.E.2d 778, 784 (1996) (awarding parties joint legal custody, but granting father exclusive control over child's religious upbringing), *overruled on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998). A trial court's decision to exercise this discretion must, however, be accompanied by sufficient findings of fact to show that such a decision was warranted. *See id.* at 564, 473 S.E.2d at 784 (finding that parties had agreed to raise child in father's Jewish faith, that the child had been so raised since birth and derived considerable mental well-being therefrom, and that the mother had recently begun pressuring the child to become Christian).

In the present case, the trial court found that "[t]he parties are currently unable to effectively communicate regarding the needs of the minor children." As Mr. Diehl did not assign error to this finding, it is binding on appeal. *Holland v. Holland*, 169 N.C. App. 564, 569, 610 S.E.2d 231, 235 (2005). Moreover, the trial court also found that since the parties' separation: the children have resided only with Ms. Diehl, and Mr. Diehl has exercised only sporadic visitation; Mr. Diehl has had very little participation in the children's educational and extra-curricular activities; Ms. Diehl has occasionally found it difficult to enroll the children in activities or obtain services for the children when Mr. Diehl's consent was required, as his consent is sometimes difficult to obtain; and when John's school recommended he be evaluated to determine whether he suffered from any learning disabilities, Mr. Diehl refused to consent to the evaluation unless it would be completely covered by insurance. These findings are supported by competent evidence in the record and are, therefore, also binding on appeal. *See Evans*, 169 N.C. App. at 360, 610 S.E.2d at 267.

These findings, however, predominantly address the trial court's reasons for awarding Ms. Diehl primary physical custody of the children. *See* Reynolds, *supra* § 13.2c, at 13-16 ("[D]ecisions exercised with physical custody involve the child's routine, not matters with long-range consequences . . . ."). Given the trial court's determination that "[b]oth parties are fit and proper to have joint legal custody of the minor chil-

dren," only the court's findings regarding the parties' difficulty communicating and Ms. Diehl's occasional troubles obtaining Mr. Diehl's consent could be construed to indicate that anything other than traditional joint legal custody would be appropriate. We cannot see, however, how those findings alone are sufficient to support an order abrogating all decision-making authority that Mr. Diehl would have otherwise enjoyed under the trial court's award of joint legal custody. We, therefore, reverse the trial court's ruling awarding primary decision-making authority to Ms. Diehl and remand for further proceedings regarding the issue of joint legal custody. On remand, the trial court may identify specific areas in which Ms. Diehl is granted decision-making authority upon finding appropriate facts to justify the allocation.

B. Visitation

[2] Mr. Diehl next argues that the trial court's order awarding him visitation only "as agreed upon by the parties" is at odds with this Court's decision in *In re Custody of Stancil*, 10 N.C. App. 545, 551-52, 179 S.E.2d 844, 849 (1971) ("The court should not assign the granting of . . . visitation to the discretion of the party awarded custody of the child."). At the beginning of its order, however, the trial court specifically found that "[Mr. Diehl] stipulated to a physical custody arrangement with [Ms. Diehl] having permanent primary physical custody and [Mr. Diehl] *having visitation rights as agreed upon by the parties* . . . ." (Emphasis added.)

Mr. Diehl has not assigned error to this finding, and it is, therefore, binding on appeal. *Holland*, 169 N.C. App. at 569, 610 S.E.2d at 235. As nothing in *Stancil* or its progeny suggests that parties may not stipulate to such an arrangement, *see, e.g., Sloop v. Friberg*, 70 N.C. App. 690, 694, 320 S.E.2d 921, 924 (1984) (concluding trial court's order that "visitation . . . occur[] at times and places agreeable to, and under such terms and conditions as set by, the [persons with custody]" was improper partly because parties had not stipulated to such an order), the trial court's finding adequately supports its conclusion on this issue, and this assignment of error is, therefore, overruled.

Child Support

A. Mr. Diehl's 2000 Child Support Obligation

[3] With respect to child support, Mr. Diehl first argues that once the parties entered into their 13 October 2000 settlement agreement, the trial court was obligated to make its child support determinations for October through December 2000 based upon Mr. Diehl's income in light

of the "equitable distribution" effectuated by the agreement. *See* N.C. Gen. Stat. § 50-20(f) (2005) ("After the determination of an equitable distribution, the court, upon request of either party, shall consider whether an order for alimony or child support should be modified or vacated . . . ."); *Capps v. Capps*, 69 N.C. App. 755, 757, 318 S.E.2d 346, 348 (1984) ("[I]f alimony or child support has already been awarded, the awards must be reconsidered upon request after the marital property has been equitably distributed."). This argument presumes the 13 October 2000 settlement agreement was in fact an "equitable distribution," which it was not.

An equitable distribution is done via a court proceeding and not by agreement between the parties. *See Brenenstuhl v. Brenenstuhl*, 169 N.C. App. 433, 435, 610 S.E.2d 301, 303 (2005) ("By executing a written separation agreement, married parties forego their statutory rights to equitable distribution and decide between themselves how to divide their marital estate following divorce."); *Blount v. Blount*, 72 N.C. App. 193, 195, 323 S.E.2d 738, 740 (1984) (stating that when a prior separation agreement fully disposes of the spouses' property rights arising out of the marriage, it acts as a bar to equitable distribution), *disc. review denied*, 313 N.C. 506, 329 S.E.2d 389 (1985). *See also* Black's Law Dictionary 578 (8th ed. 2004) (defining "equitable distribution" as "[t]he division of marital property *by a court* in a divorce proceeding" (emphasis added)).

Even assuming *arguendo* that the parties' settlement agreement was an equitable distribution, a prior child support award, following an equitable distribution, need only be reconsidered "upon [the] request" of a party. N.C. Gen. Stat. § 50-20(f); *Capps*, 69 N.C. App. at 757, 318 S.E.2d at 348. Mr. Diehl made no such request, and, consequently, the trial court was not required to recalculate Mr. Diehl's child support obligation in light of any equitable distribution.

B. Mr. Diehl's 2003 Income

[4] Mr. Diehl next challenges the trial court's use of an average of his monthly gross incomes in 2001 and 2002 as a basis for finding his monthly gross income for 2003 to be $19,791.50. Mr. Diehl's own proposed findings of fact, however, urged the trial court to find that his 2003 monthly income, based upon his 2002 tax return, was $22,435.00. In other words, the trial court's finding as to Mr. Diehl's 2003 monthly income was nearly $3,000.00 less than Mr. Diehl's own proposed findings of fact had suggested. We conclude, therefore, that Mr. Diehl has failed to preserve this issue for appellate review. N.C.R. App. P. 10(b)(1)

("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). *See also In re Petition of Utils., Inc.*, 147 N.C. App. 182, 194, 555 S.E.2d 333, 341-42 (2001) (concluding North Carolina Utilities Commission did not err in ordering reduction in utility rates petitioner could charge when petitioner acquiesced to such a reduction in its proposed order).

Even if we assume this issue had been preserved for our review, Mr. Diehl argues on appeal only that the trial court erred when it found Mr. Diehl had not presented adequate information as to his actual 2003 income and that the trial court's decision to average his 2001 and 2002 income improperly imputed income to him. As to Mr. Diehl's evidence of his 2003 income, the trial court found that Mr. Diehl's tax returns were "highly unreliable" and that Mr. Diehl had not "present[ed] adequate information as to his 2003 income." These findings are supported by competent evidence indicating that several deductions on the 2003 return were improper, and that the return contained at least one incident of "major incorrect reporting." Indeed, Mr. Diehl's proposed order even states that "[n]either party presented sufficient income information about the parties' respective 2003 tax returns, as the 2003 tax returns were not completed by either party until immediately before the trial." Thus, the trial court's findings with respect to the reliability of Mr. Diehl's evidence of his 2003 income are supported by competent evidence, and, consequently, are binding on appeal. *Evans*, 169 N.C. App. at 360, 610 S.E.2d at 267. Given the unreliability of Mr. Diehl's documentation, we cannot conclude under the circumstances of this case that the trial court abused its discretion by averaging Mr. Diehl's income from his two prior tax returns to arrive at his 2003 income.

We disagree with Mr. Diehl's characterization of this methodology as "imputation" of income. Imputation is used to determine a parent's child support obligation based upon earning capacity, rather than actual income, when the parent is "voluntarily unemployed or underemployed . . ., and the court finds that the parent's voluntary unemployment or underemployment is the result of . . . bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation." N.C. Child Support Guidelines, 2006 Ann. R. N.C. at 49. In the present case, the trial court did not impute income to Mr. Diehl as a result of voluntary unemployment or underemployment, but rather was merely attempting to determine what Mr. Diehl actually earned in 2003. Consequently, the law of imputation is inapplicable. *See Burnett v.*

*Wheeler*, 128 N.C. App. 174, 177, 493 S.E.2d 804, 806 (1997) (finding no imputation of income where trial judge computed defendant's actual gross income to be $77,000.00 per year, despite defendant's reported income of $29,000.00 per year, based on defendant's other sources of funds). This assignment of error is overruled.

C. Sufficiency of Findings of Fact

**[5]** Finally, Mr. Diehl argues that the trial court should have either used or referred to the North Carolina Child Support Guidelines (the "Guidelines") for determining his various child support obligations and that, in any event, the trial court's findings of fact were inadequate to support its calculation of support. Under N.C. Gen. Stat. § 50-13.4(c) (2005), trial courts "shall determine the amount of child support payments by applying the presumptive [G]uidelines . . . ." These Guidelines, however, state that "[i]n cases in which the parents' combined adjusted gross income is more than $20,000 per month ($240,000 per year), the supporting parent's basic child support obligation cannot be determined by using the child support schedule [contained in these Guidelines]." N.C. Child Support Guidelines, 2006 Ann. R. N.C. at 48.

The trial court in this case concluded that the Guidelines did not apply because it found the parties' combined monthly incomes in 2000, 2001, 2002, and 2003 exceeded the $20,000.00 monthly maximum. On appeal, however, Mr. Diehl argues that in both 2001 and 2003, the parties' combined gross income was below $20,000.00 per month.

As to the applicability of the Guidelines in 2001, Mr. Diehl's arguments focus solely on his own income and not on the combined income of the parties, as required by the Guidelines. Even if we adopt Mr. Diehl's proposed 2001 monthly income figure of $14,687.00, he does not contest the trial court's finding that Ms. Diehl's monthly income in 2001 was $6,124.00. When combined, the two amount to $20,811.00, which exceeds the $20,000.00 monthly maximum contemplated by the Guidelines. Regarding the applicability of the Guidelines in 2003, we have already upheld the trial court's finding that Mr. Diehl's monthly income in 2003 was $19,791.50. As Mr. Diehl does not contest the trial court's finding that Ms. Diehl's monthly income in 2003 was $5,355.00, this brings the parties' combined monthly income in 2003 to $25,146.50, a figure well in excess of the Guidelines' $20,000.00 monthly maximum.

Mr. Diehl alternatively argues that even if the parties' combined incomes did exceed the amount covered by the Guidelines, the

Guidelines should still have been considered. According to Mr. Diehl, the trial court was required to "mathematically extrapolat[e]" Mr. Diehl's child support obligations from the amounts provided for in the Guidelines. The Guidelines provide to the contrary, stating that "[i]n cases in which the parents' combined income is above $20,000 per month, *the court should on a case by case basis, consider the reasonable needs of the child(ren) and the relative ability of each parent to provide support.*" N.C. Child Support Guidelines, 2006 Ann. R. N.C. at 48 (emphasis added). To accept Mr. Diehl's position would render the Guidelines binding even when, by their terms, they are not.

Moreover, our case law is explicit, in accordance with the Guidelines, that when the monthly maximum contemplated by the Guidelines is exceeded, the trial court is required to order a child support award based on the particular facts and circumstances of the case and not merely to extrapolate from the Guidelines. *See, e.g., Meehan v. Lawrance,* 166 N.C. App. 369, 383-84, 602 S.E.2d 21, 30 (2004) ("The Guidelines are inapplicable [when the combined monthly adjusted gross income of the parties exceeds $20,000.00] . . . and the trial court [i]s required to make a case-by-case determination."). Consequently, we hold that the trial court was not bound by the Guidelines in determining Mr. Diehl's child support obligations.

Regarding the adequacy of the trial court's findings of fact as to the child support actually ordered, this Court stated in *Meehan*:

"[A]n order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to 'meet the reasonable needs of the child' and (2) the relative ability of the parties to provide that amount. These conclusions must themselves be based upon factual *findings* specific enough to indicate to the appellate court that the judge below took 'due regard' of the particular 'estates, earnings, conditions, [and] accustomed standard of living' of both the child and the parents. It is a question of fairness and justice to all concerned."

*Id.* at 383, 602 S.E.2d at 30 (quoting *Coble v. Coble,* 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980)) (alteration in original); *see also* N.C. Gen. Stat. § 50-13.4(c) ("Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties . . . and other facts of the particular case.").

**DIEHL v. DIEHL**

[177 N.C. App. 642 (2006)]

The only findings in this case regarding the reasonable needs of the children simply state, without any itemization, a lump sum amount for the reasonable needs of the children in 2000, 2001, 2002, and 2003. They give no indication of what methodology or facts the trial court considered to determine what was necessary "to meet the reasonable needs of the child[ren] for [their] health, education, and maintenance . . . ." N.C. Gen. Stat. § 50-13.4(c). Ms. Diehl admits that "[c]learly, the trial court did not use all of the expenses listed" in the parties' financial affidavits. Without more explanation, it is impossible to determine on appeal where the figures used by the trial court came from at all. Moreover, although the order does contain certain historical costs associated with the children, it includes no findings as to the individual costs and expenses the trial court expects to be associated with each child in the future. While the trial court did make findings regarding the parties' particular " 'estates, earnings, conditions, [and] accustomed standard of living,' " *Meehan*, 166 N.C. App. at 383, 602 S.E.2d at 30 (quoting *Coble*, 300 N.C. at 712, 268 S.E.2d at 189), we conclude these are insufficient to remedy the absence of findings explaining the reasonable needs of the children. Accordingly, we remand for further findings of fact regarding the amount of child support awarded..

### Attorneys' Fees

[6] In her cross-appeal, Ms. Diehl argues that the trial court erred in declining to award her attorneys' fees. An award of attorneys' fees in actions for custody and support of minor children requires the trial court to find (1) that the party seeking the award of fees was acting in good faith, and (2) the party has insufficient means to defray the expense of the suit. N.C. Gen. Stat. § 50-13.6 (2005); *Burr v. Burr*, 153 N.C. App. 504, 506, 570 S.E.2d 222, 224 (2002).[1]

"Where an award of attorney's fees is prayed for, but denied, the trial court must provide adequate findings of fact for this Court to review its decision." *Gowing v. Gowing*, 111 N.C. App. 613, 620, 432 S.E.2d 911, 915 (1993). Although the trial court denied Ms. Diehl's request for attorneys' fees, it made no findings relating to that denial, such as whether Ms. Diehl acted in good faith or whether she had insufficient means to defray the expense of the suit. Consequently, we must remand for entry of proper factual findings to support the trial court's decision regarding Ms. Diehl's request for attorneys' fees. *Id.*

---

1. We note that, because this was an action for both custody and support rather than an action solely for support, Ms. Diehl's arguments on appeal regarding the alleged unreasonableness of the child support paid by Mr. Diehl prior to the trial court's order are irrelevant. *Hudson v. Hudson*, 299 N.C. 465, 472-73, 263 S.E.2d 719, 724 (1980).

Affirmed in part, reversed in part, and remanded in part.

Judges HUNTER and McCULLOUGH concur.