IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-957

Filed 7 November 2023

Mecklenburg County, No. 19-CVD-649

STEVEN URVAN, II, Plaintiff,

v.

CASSANDRA LYNN ARNOLD, Defendant.

Appeal by Plaintiff from order entered 11 April 2022 by Judge Jena P. Culler

in Mecklenburg County District Court. Heard in the Court of Appeals 3 October 2023.

*Connell & Gelb PLLC, by Michelle D. Connell, for Plaintiff-Appellant.*

*Plumides, Romano & Johnson, PC, by Michael Romano, for Defendant-Appellee.*

COLLINS, Judge.

Plaintiff Steven Urvan II appeals from the trial court's order awarding

Defendant Cassandra Arnold primary physical custody of their minor child and final

decision-making authority regarding major decisions affecting their minor child.

Plaintiff argues that the trial court erred by determining child custody based on the

best interests of the child rather than using a substantial change of circumstances

standard, and that the trial court abused its discretion by awarding Defendant final

decision-making authority. Plaintiff failed to preserve for appellate review his

argument that the trial court erred by using the best interests of the child standard.

Even assuming arguendo that this issue is properly before us, the trial court did not err by determining child custody based on the best interests of the child. Furthermore, the trial court did not err by granting Defendant final decision-making authority because the findings of fact support the trial court's decision. Accordingly, we dismiss in part and affirm in part.

## I.  Background

Plaintiff and Defendant met in Georgia and began a romantic relationship in 2010. The parties began living together in Cornelius, North Carolina, in 2011. Defendant gave birth to their son, Sean,[1] on 5 November 2018 in Charlotte, North Carolina. While Defendant was pregnant with Sean, she spent a lot of time in Georgia with her parents and traveled between Georgia and North Carolina. After Defendant gave birth, she continued to travel between North Carolina and Georgia with Sean. Defendant and Sean moved to Georgia on 10 January 2019.

That same day, Plaintiff filed suit in Mecklenburg County District Court seeking temporary and permanent legal and physical custody of Sean.[2] Plaintiff subsequently filed a motion for temporary parenting arrangement. The trial court granted Plaintiff's motion and scheduled a hearing for 10 June 2019. Defendant filed

---

[1] We use a pseudonym to protect the minor child's identity.
[2] The parties filed various other motions that were decided by the trial court, none of which are relevant to the issues on appeal.

an answer and counterclaims for child custody and temporary and permanent child support.

The parties completed an Administrative Office of the Courts form AOC-CV-220, Memorandum of Judgment/Order ("Memorandum"). Handwritten in the space provided for the terms and conditions of the agreement is the following:

> The parties have one (1) minor son, namely [Sean], born November 5, 2018. The parties have resolved temporary legal and physical custody. The parties attach hereto and incorporate herein Exhibit "A" as their agreement on temporary legal and physical custody.

Exhibit A was a print out of an email which provided for "Temporary Joint Legal Custody" and "Graduated Temporary Physical Custody," and set forth a weekly and holiday custody schedule. The Memorandum also provided, "A formal judgment/order reflecting the above terms will be prepared by and submitted no later than _____ for signature by a judge[.]" The date "June 24, 2019" is handwritten in the blank space. The Memorandum was file stamped by the Clerk of Court on 10 June 2019. However, the record does not contain a "formal judgment/order . . . sign[ed] by a judge[.]"

Plaintiff filed a motion for contempt and a show cause order on 13 December 2021, alleging that Defendant had failed to abide by certain terms of the Memorandum. The trial court held a hearing on the parties' claims for custody and Plaintiff's contempt motion on 24 and 25 March 2022. By written order entered 11 April 2022, the trial court concluded, in relevant part, that "it is in the best interest

of the child to live primarily with [Defendant] during the school year beginning in August 2022 and to have time with [Plaintiff]" and that "[i]t is in the best interest of the child that the primary custodial parent has the final decision making authority regarding major decisions affecting the child in the event a mutual decision cannot be reached between the parties." Plaintiff appealed.

## II.    Discussion

### A. Child Custody Determination

Plaintiff first argues that the trial court erred by determining child custody based on the best interests of the child rather than using a substantial change of circumstances standard because the parties' Memorandum was a permanent custody order. Plaintiff's argument is unpreserved and otherwise lacks merit.

"[T]o preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). It is well settled that "the law does not permit parties to swap horses between courts in order to get a better mount" on appeal. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). Accordingly, where an appellant presents a different theory on appeal than was argued in the trial court, the appellate argument is not properly preserved for our review. *Angarita v. Edwards*, 278 N.C. App. 621, 625, 863 S.E.2d 796, 800, *appeal dismissed*, 379 N.C. 159, 863 S.E.2d 601 (2021).

Here, Plaintiff argued exclusively in the trial court that child custody should be determined based on the best interests of the child. In an initial discussion with the trial court, Plaintiff indicated that the trial court should determine the best interests of the child:

> [PLAINTIFF]: You're certainly able to make rulings about summer and school. I mean, it happens all the time.
>
> [DEFENDANT]: Yeah.
>
> [PLAINTIFF]: But something is going to happen in the summer (inaudible) school and so especially --
>
> THE COURT: Yeah.
>
> [PLAINTIFF]: -- since it's a small window, *I think it would essentially be finding now that this is in the best interest.* [emphasis added]
>
> [DEFENDANT]: Yeah, I would agree with that.

During closing arguments, Plaintiff again argued that the best interests of the child standard applied:

> [PLAINTIFF]: . . . You know, but I -- I do think that little [Sean] is a very lucky child. He has two parents that clearly love him very much. Both parents clearly want to provide for him and want him to grow up to be well-developed and well-loved and I don't think there's any question from anyone that these two parents love their child.
>
> The hard part, of course, is that *when you're making a decision about custody, you're making a decision about best interest . . . .* [emphasis added]
>
> . . . .
>
> So we would be asking for primary custody during the school year with substantial visitation to [Defendant] both during the breaks and during the summer . . . .

At no point did Plaintiff argue in the trial court that child custody should be determined using the substantial change of circumstances standard. To the contrary, it is abundantly clear from the record and transcript that Plaintiff advocated that it was in the best interests of the child for Plaintiff to be given primary custody. Accordingly, Plaintiff's argument that the trial court erred by determining child custody based on the best interests of the child rather than the substantial change of circumstances standard is not preserved for appeal and is dismissed.

Even assuming arguendo that this issue is properly before us, Plaintiff's argument is without merit.

A custody agreement is a contract that "remains modifiable by traditional contract principles unless a party submits it to the court for approval or if a court order specifically incorporates the [custody] agreement." *Peters v. Pennington*, 210 N.C. App. 1, 14, 707 S.E.2d 724, 734 (2011) (citation omitted). A trial court's "initial custody determination requires a custody award to such person 'as will best promote the interest and welfare of the child.'" *Senner v. Senner*, 161 N.C. App. 78, 80, 587 S.E.2d 675, 676 (2003) (quoting N.C. Gen. Stat. § 50-13.2). "Subsequent modification of a custody order requires a 'showing of changed circumstances[.]'" *Id.* (quoting N.C. Gen. Stat. § 50-13.7).

Here, the parties executed the Memorandum resolving temporary legal and physical custody and filed it with the Clerk of Court. However, there is no record evidence that the Memorandum was presented to or approved by the trial court, or

that the Memorandum was specifically incorporated into a court order. Accordingly, the Memorandum was not the trial court's initial custody determination, *see Peters*, 210 N.C. App. at 14, 707 S.E.2d at 734 (holding that a separation agreement which included child custody provisions was not incorporated or approved by the trial court, and therefore the trial court was not required to find changed circumstances in its child custody order), and the trial court's order entered 11 April 2022 was an initial custody determination requiring the trial court to determine child custody based on the best interests of the child. *See Senner*, 161 N.C. App. at 80, 587 S.E.2d at 676. The trial court thus did not err by determining child custody based on the best interests of the child.[3]

## B. Final Decision-Making Authority

Plaintiff next argues that the trial court erred by "giving the primary custodial parent final decision-making authority where the findings of fact did not establish the 'actual effect' the parties' communications had on the minor child." (capitalization altered).

Legal custody generally refers "to the right and responsibility to make decisions with important and long-term implications for a child's best interest and

---

[3] Furthermore, even if the Memorandum were considered an initial custody determination by the trial court, the Memorandum was temporary based on its plain and unequivocal language and did not convert to a permanent order based on the passage of time primarily during the COVID-19 pandemic. *See Miller v. Miller*, 201 N.C. App. 577, 580-81, 686 S.E.2d 909, 912 (2009) (holding that a period of 30 months did not convert a temporary custody order to a permanent custody order because "the child custody matter did not lie dormant after the . . . consent order was entered").

welfare." *Diehl v. Diehl*, 177 N.C. App. 642, 646, 630 S.E.2d 25, 27 (2006) (citations omitted). "Our trial courts have wide latitude in distributing decision-making authority between the parties based on the specifics of a case." *Peters*, 210 N.C. App. at 17, 707 S.E.2d at 736 (citation omitted). "This grant of latitude refers to a trial court's discretion to distribute certain decision-making authority that would normally fall within the ambit of joint legal custody to one party rather than another based upon the specifics of the case." *Diehl*, 177 N.C. App. at 647, 630 S.E.2d at 28 (citations omitted). "While we review a trial court's deviation from pure joint legal custody for abuse of discretion, a trial court's findings of fact must support the court's exercise of this discretion." *Eddington v. Lamb*, 260 N.C. App. 526, 535, 818 S.E.2d 350, 357 (2018) (quotation marks and citations omitted). "Accordingly, this Court must determine whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority." *Hall v. Hall*, 188 N.C. App. 527, 535, 655 S.E.2d 901, 906 (2008).

Here, the trial court made the following findings of fact:

> 20. The parties have difficulty communicating effectively with each other. At exchanges interaction between the two can be curt and rude. That is not in the best interest of the child. The way the parties communicate is problematic not just at exchanges. The court has in evidence multiple communications between the parties in the form of emails. Of the emails offered into evidence, [Plaintiff's] way of talking to [Defendant] is condescending and demanding. . . . It honestly comes across like he is talking to a child he is disciplining. The court has other examples of communications between the parties in the form of

emails. . . . The court has concern about [Plaintiff's] comments that he will tell the child that [Defendant] is to blame for him not getting to do what he wants. It is not healthy or in the best interest of the child for the child to be put in the middle and have either parent tell him it is the other's fault he can't get his way.

21. In Defendant's Exhibit 9 [Plaintiff] says to [Defendant] in an email, "You have been the sole and exclusive cause of every single "traumatic" situation my son has been through. You provoke conflict, you cause scenes, you act badly in virtually every situation. You are an unhealthy mix of unintelligent, unworldly, and uneducated, but aggressive and extremely belligerent and I consider you to be dangerous to my son's health and well-being. Your life would be so much better if you would stop trying to provoke fights with me." In another message he describes where she lives as a hillbilly town that lacks decent medical facilities.

22. [Plaintiff] testified a few times when asked about such toned emails, that it was not his finest moment. There are a lot of examples of [Plaintiff] not acting in his finest moments in the way he talks to [Defendant]. Based on testimony, the court is confident that [Defendant] has also communicated with [Plaintiff] in a derogatory manner at times.

. . . .

24. [Defendant] points out that [Plaintiff] has not provided her with information about all of the nannies he has utilized either. [Plaintiff] has used nannies and he cannot give an exact answer as to how many. He has used part time nannies and two full time nannies. [Plaintiff] sees a preschool and a nanny as two different things; one being education and one being childcare. After an incident where [Plaintiff] accused [Defendant] of being rude, aggressive and demanding with one of the nannies, he instructed [Defendant] that she is not to have direct contact with his people. There is a subtle difference in viewing one as child care and the other as education and instruction, but the basic issue is that both parties are entitled to have

information about where the child is and who the child is with.

. . . .

30.  The court finds, considering all the evidence, that it is in the best interest of the child to live primarily with [Defendant] during the school year beginning in August 2022 and to have time with [Plaintiff] as set forth herein. Before August 2022, it is best for the parties to continue to each have significant time, simplify the schedule to week on week off to give [Plaintiff] an extra day and to have exchange times and methods more well defined.

31.  It is in the best interest of the minor child to have a method of resolving conflict when mutual decisions for major issues affecting the child cannot be reached.  It is in the best interest of the child that the primary custodial parent has the final decision making authority regarding major decisions affecting the child in the event a mutual decision cannot be reached between the parties.

Based on these findings of fact, the trial court awarded Defendant, as the primary custodial parent, final decision-making authority regarding major decisions affecting the child "[i]n the event a mutual decision cannot be reached after meaningful good faith discussion between the parties[.]"  As required by *Diehl*, the trial court found that it is in the best interests of the child for Defendant to have final decision-making authority in the event that a mutual decision cannot be reached between the parties and found facts as to why Defendant should have such authority. As required by *Hall*, the trial court found facts detailing past disagreements by the parties which illustrate their inability to communicate and the effect their contentious communications will have on the child, including that "[Plaintiff] will tell the child that [Defendant] is to blame for him not getting to do what he wants" and

that the child will "be put in the middle and have either parent tell him it is the other's fault he can't get his way."

Accordingly, the trial court did not err by awarding Defendant final decision-making authority regarding major decisions affecting the child "[i]n the event a mutual decision cannot be reached after meaningful good faith discussion between the parties[.]"

## III.    Conclusion

Plaintiff failed to preserve for appellate review his argument that the trial court erred by using the best interests of the child standard.   Even assuming arguendo that this issue is properly before us, the trial court did not err by determining child custody based on the best interests of the child.  Furthermore, the trial court did not err by granting Defendant final decision-making authority because the findings of fact support the trial court's decision.  Accordingly, we dismiss in part and affirm in part.

DISMISSED IN PART; AFFIRMED IN PART.

Judges GRIFFIN and THOMPSON concur.