ZAKIE G. BEALL v. LESTER T. BEALL

No. 122

(Filed 29 September 1976)

1. **Divorce and Alimony §§ 17, 23— alimony and child support — fixing amount**

In fixing the amount of alimony and child support which the husband is required to pay the wife the court must consider not only the needs of the wife and children but the estate and earnings of both the husband and wife. Ordinarily the husband's ability to pay is determined by his income at the time the award is made if the husband is honestly engaged in a business to which he is properly adapted and is in fact seeking to operate his business profitably; however, capacity to earn may be the basis of an award if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support of his wife and children.

2. **Divorce and Alimony §§ 17, 23— permanent alimony and child support — award beyond defendant's ability to pay**

In an action for divorce from bed and board, permanent alimony, child custody and support and attorney's fees, the trial court did not err in requiring defendant to pay $500 to plaintiff's attorney, approximately $2300 for family debts past due when defendant left the family residence, and the taxes and mortgage on the family home; however, the trial court's order requiring defendant to pay $10,800 annually for alimony and child support and at least $627 in property

Beall v. Beall

taxes in addition to satisfying or refinancing the mortgage on the family home was unrealistic, beyond defendant's ability, and therefore must be modified.

**3. Appeal and Error § 16— motion that defendant be adjudged in contempt — no jurisdiction of trial court to entertain pending appeal**

Trial court was without jurisdiction to entertain a motion that defendant be adjudged in contempt for failure to obey an order of the trial court requiring him to pay taxes and pay or refinance the mortgage on the parties' home while defendant's appeal from that order was pending; but appeal does not authorize a violation of the order, which he violates at his peril.

**4. Appeal and Error § 16; Divorce and Alimony § 21— failure of defendant to pay for house — motion that defendant be adjudged in contempt**

Since the Supreme Court in a divorce, alimony and child support action upholds that portion of the trial court's order requiring defendant to pay taxes and pay or refinance the mortgage on the home occupied by plaintiff and the parties' children, the cause is remanded for disposition of plaintiff's motion made in the Supreme Court that defendant be adjudged in contempt of court for failure to obey the order.

ON *certiorari* to review the decision of the Court of Appeals (26 N.C. App. 752, 217 S.E. 2d 98 (1975)), which affirmed the judgment of *Fowler, J.,* entered 13 December 1974 in the District Court of GUILFORD, argued as case No. 1 at the Spring Term 1976.

Plaintiff wife brought this action against her husband seeking: (1) a divorce from bed and board under G.S. 50-7; (2) alimony *pendente lite* under G.S. 50-16.8(d)(1); (3) alimony under G.S. 50-16.8(b)(1) and G.S. 50-16.2; (4) custody of and support payments for the couple's four children under G.S. 50-13.5(b)(3); and (5) attorney's fees.

In her complaint plaintiff alleged that defendant had: (1) "willfully offered such indignities to [her], as to render [her] condition intolerable and her life burdensome. . . . " (G.S. 50-7(4) and G.S. 50-16.2(7)), and (2) "willfully failed and refused to provide [her] with the necessary support for herself and [their] children" (G.S. 50-16.2(10)). In his answer defendant denied these allegations and alleged a cross claim for a divorce from bed and board alleging that she "has generally acted in a contemptuous manner toward him, rendering his life burdensome and conditions intolerable."

Admissions in the pleadings, and stipulations at the trial, establish that the parties were married on 27 December 1955

Beall v. Beall

in Danbury, Connecticut; that they have four daughters who, in July 1974, were respectively 6, 11, 16, and 17½ years old (the eldest was 18 on 4 January 1975) ; and that plaintiff is a fit and proper person to have custody of these children.

Judge Fowler heard the case without a jury. Both parties offered evidence with reference to their income, earning ability, financial requirements, and the misconduct of the other. Upon completion of the evidence Judge Fowler made findings of fact and conclusions of law. He concluded, *inter alia,* that plaintiff is the dependent spouse and defendant the supporting spouse; that defendant had wilfully failed to provide plaintiff with necessary subsistence and had offered such indignities to her person as to render her condition intolerable and her life burdensome; that defendant should be required to pay plaintiff reasonable alimony and child support and to contribute to the payment of reasonable fees for plaintiff's attorney; that plaintiff should have possession of the homeplace (which the parties own as tenants by the entirety) as a residence for herself and the children; that custody of the children should be committed to plaintiff subject to defendant's reasonable visitation rights; that at the time of the separation of the parties on 1 October 1974 there were outstanding "family debts" which defendant should pay. Further findings and evidence pertinent to this appeal will be set out in the opinion.

Upon the foregoing conclusions Judge Fowler awarded plaintiff permanent alimony, custody of the children and possession of the home with its furnishings (certain enumerated items excepted). Defendant was granted "reasonable visitation rights" with the children. Beginning 1 January 1975 defendant was ordered to pay to plaintiff, until her death or remarriage, alimony in the amount of $300.00 a month. As child support he was required to pay plaintiff $200.00 a month per child (except when he was paying a child's expenses at college) "until the month in which each child becomes 18 years of age." Defendant was also directed to pay the taxes on the home; the installments, due and to become due, on the mortgage upon the home; and the mortgage principal of $24,000.00 on or before its due date in August, 1975, unless he should arrange with the mortgagee to pay this obligation over a period of time. Finally, defendant was directed to pay within 30 days enumerated "family debts" in the sum of $2,291.22, and to pay

---

Beall v. Beall

---

plaintiff's attorney the sum of $500.00 on or before 1 January 1975.

From this judgment defendant appealed to the Court of Appeals, which affirmed the judgment of the District Court. Upon defendant's petition we allowed certiorari.

*Smith, Patterson, Follin, Curtis & James by Charles A. Lloyd and Norman B. Smith for plaintiff appellee.*

*Turner, Rollins & Rollins for defendant appellant.*

SHARP, Chief Justice.

Upon conflicting allegations and evidence the trial judge found that "plaintiff was without substantial fault in her relationship with defendant"; that defendant had been guilty of specified marital misconduct which entitled plaintiff to permanent alimony; that during the marriage "plaintiff had been actually substantially dependent upon defendant for her support," and he has "customarily provided most of the funds" for the support of his wife and children. In accordance with defendant's admission in the answer, and his stipulation at trial, the judge found plaintiff to be a fit and proper person to have the custody of the children of the marriage. On plenary evidence he found that the children's best interests will be served by placing them in plaintiff's custody.

Twenty-two of defendant's thirty-four assignments of error challenge the foregoing findings and conclusions which they support on the ground that each finding is unsupported by the evidence and each conclusion is erroneous either because it is contrary to law or unsupported by the findings. As to these assignments we concur in the opinion of the Court of Appeals that they are without merit and that "recounting the sordid evidence adduced at the trial" would serve no useful purpose. We also share that court's view that defendant's statements in support of these assignments are an attempt to reargue the evidence in the hope that the appellate court will substitute itself for the trial court and accept defendant's version of the sad story. *See Beall v. Beall*, 26 N.C. App. 752, 753, 217 S.E. 2d 98, 99 (1975).

With reference to these twenty-two assignments it suffices to say that the district court's conclusions that plaintiff is entitled to permanent alimony and that the best interests of the

children require that their custody be awarded to plaintiff are fully supported by findings based upon competent evidence. When the trial judge is authorized to find the facts, his findings, if supported by competent evidence, will not be disturbed on appeal despite the existence of evidence which would sustain contrary findings. *Rock v. Ballou,* 286 N.C. 99, 209 S.E. 2d 476 (1974) ; 7 Strong, N. C. Index 2d *Trial* § 58 (1968).

Defendant's remaining twelve assignments of error challenge the court's findings and the conclusions based thereon that defendant should be compelled to pay (1) alimony to plaintiff in the amount of $300.00 per month until her death or remarriage and child support of $200.00 per month until the month in which a child becomes 18 years of age; (2) specified "family debts" in the amount of $4,291.22; (3) $500.00 on attorney's fees to plaintiff's counsel; and (4) the taxes and mortgage on the parties' home, possession of which the court awarded to plaintiff and the children.

Defendant contends that all the evidence, as well as the court's findings, demonstrate his inability to pay the amounts ordered and that the court did not take into consideration the income of plaintiff in fixing his payments. These contentions require an examination of the evidence and the applicable statutes.

The proper amount of alimony is determined by G.S. 50-16.5(a) which provides: "Alimony shall be in such amount as the circumstances render necessary, having due regard to the estates, earnings, earning capacity, condition, accustomed standard of living of the parties, and other facts of the particular case."

Child support payments are determined by G.S. 50-13.4(c) which provides: "Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, and other facts of the particular case."

[1]  In determining the amount of alimony and child support to be awarded the trial judge must follow the requirements of the applicable statutes. The amount is a reasonable subsistence, to be determined by the trial judge in the exercise of a sound

judicial discretion from the evidence before him. His determination is reviewable, but it will not be disturbed in the absence of a clear abuse of discretion. *Eudy v. Eudy,* 288 N.C. 71, 215 S.E. 2d 782 (1975). In fixing the amount of alimony and child support which the husband is required to pay the wife the court must consider not only the needs of the wife and children but the estate and earnings of both the husband and wife. It is a question of fairness and justice to all parties. *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966). Ordinarily the husband's ability to pay is determined by his income at the time the award is made "if the husband is honestly engaged in a business to which he is properly adapted and is in fact seeking to operate his business profitably." Capacity to earn, however, may be the basis of an award if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support for his wife and children. *Conrad v. Conrad,* 252 N.C. 412, 418, 113 S.E. 2d 912, 916 (1960) ; *Harris v. Harris,* 258 N.C. 121, 128 S.E. 2d 123 (1962).

We now attempt to apply the law to the facts of this case.

On 1 September 1974 plaintiff became employed at an annual salary of $9,500.00 as a teacher. The record does not disclose her take-home pay or her net income. However, deductions are made for income tax, social security, and health insurance. Other than her salary she has no income or source of revenue. At the time of the hearing she needed 22 hours of graduate study to complete the requirements for the Master of Arts degree, the completion of which would increase her salary. She was then "enrolled in the graduate program at UNC-G." She estimated that the expenditure of $1,288.00 would be necessary to complete required courses. Excluding the mortgage payments and taxes on the home, but including insurance and repairs, income taxes and life insurance, plaintiff estimated the annual living expenses of herself and children (60% for the children, 40% for herself) to be $21,123.20 annually or approximately $1,760.00 a month.

At the hearing plaintiff testified that family bills outstanding when defendant left the home on 1 October 1974, and still unpaid, totaled $6,216.38. These bills included the 1974 taxes on the home in the amount of $627.70, medical bills, automobile

Beall v. Beall

payments, college payments, clothing bills, and household expenses.

Defendant, age 45, is a furniture designer. His testimony tended to show: In 1969 he used a $10,000.00 gift from his mother as the down payment on the house at 209 Hillcrest Drive in High Point in which he resided with his family prior to the separation. The purchase price was "about $48,500.00." The annual payments of principal and interest are $3,600.00 with the remaining principal being due on 1 August 1975. The 1974 taxes were $627.70. Plaintiff estimated the insurance on the home costs $200.00 annually; defendant estimated it at $180.00.

In 1973 his gross income was $43,511.00; his net income, $16,568.00. In 1972 his gross was $37,974.00; his net, $16,007.00. In 1971 his gross from the furniture design business was $30,244.00; his net $13,942.00. During four months of 1971 he was employed by Bassett Furniture Company as a senior designer at a salary rate of $25,000.00 annually. When his employment was terminated on 21 November 1971 he resumed business for himself. This business requires extensive travel in order to acquire customers. When a new design is created his customers require his presence at the factory to supervise the work. He is now designing furniture for manufacturers in Pennsylvania, Puerto Rico, Arkansas, Virginia, Tennessee, and Western North Carolina.

In 1973 defendant received $16,500.00 from the installment sale of Connecticut land which he had received from his parents and sold for $56,000.00. In 1974 he received an installment of $14,000.00. With this he made the $3,600.00 annual payment on the house and other bills. He also put $7,500.00 in a trust fund which he plans to use for the children's education.

Defendant, who is now living in an apartment in High Point, is "out of town on business up to three days a week." He has estimated his personal expenses, which include "Children's Education $300.00" and "Car Payments $204.00" on his $8,400.00 Oldsmobile Toronada, at $1,789.00.

Upon the foregoing evidence the trial judge found the following facts with reference to the parties' earnings and assets: (1) "In recent years" defendant has had a net income of $14,000.00 to $18,000.00 a year. A balance of $24,000.00 is owing

to him from the sale of land in Connecticut, and he has a $7,500.00 fund which he denominates as a "trust fund" for his children's education. (2) Plaintiff earns a salary of $9,500.00. (3) As tenants by the entirety plaintiff and defendant own the house and lot at 219 Hillcrest Street, High Point, the fair market value of which is presently estimated to be $64,000.00; that it is encumbered by a first mortgage on which the balance of $24,000.00 became due in August 1975.

With reference to the needs of the parties the judge found that "the reasonable monthly needs of plaintiff and the children of the marriage for support and maintenance are in the approximate amount of $1,900.00, which is in excess of defendant's present ability to pay." He made no findings with reference to defendant's reasonable living expenses.

The foregoing findings are supported by competent evidence. The question is, on these facts, are the payments which the court has ordered the defendant to make fair and just to the parties and children considering the respective needs?

[2]   The sums defendant was ordered to pay fall into three cagegories: (1) nonrecurring, lump-sum payments for past due debts; (2) "annual mortgage payments and taxes which are now due and shall hereafter become due"; (3) recurring monthly payments of alimony and child support.

(1) The two nonrecurring, lump-sum payments of past due debts total $2,791.22. They are (a) $500.00 to plaintiff's attorney for services rendered and (b) $2,291.22 for utilities, clothing, household expenses, school and college tuition bills which were past due when defendant left the family residence on 1 October 1974. These bills, to be paid directly to the creditors, are included in plaintiff's itemization of unpaid family debts totaling $6,216.38. Because the trial judge made no order with reference to the payment of the balance of the bills past due on 1 October 1974, we must assume that plaintiff will have to pay them, an amount of $3,297.68 (if we exclude the $627.70 for 1974 taxes on the home).

Under all the circumstances, the two one-time, lump-sum payments appear to be entirely just and reasonable. The order that defendant pay them will not be disturbed.

(2) The annual expenditures absolutely necessary to retain the property at 219 Hillcrest Street as a home for plaintiff and

Beall v. Beall

the children are those for taxes, approximately $600.00, and the payments specified in the mortgage. Prior to 1975, the mortgage payments were $3,600.00 annually. Prorated monthly, these two payments total $350.00. Of course, both prudence and, no doubt, the mortgage contract require the parties to carry insurance on the property. In defendant's estimated "family budget" ($1,224.27 a month), he listed "Real estate Ins." at $15.00 a month, or $180.00 annually. Obviously expenditures for repairs can also be anticipated. Under the judge's order, insurance and repairs, since they were not required of defendant, were left to plaintiff.

At the present time, the sum of $350.00 as a monthly proration of taxes and mortgage payments has little significance since, in August 1975, the balance on the mortgage became due and payable. The court's order required defendant to pay this balance at that time or to refinance it. Almost certainly he would be able to refinance an indebtedness of $24,000.00 on a dwelling having a fair market value of $64,000.00. If not, however, with a savings account of $7,500.00 and a secured debt of $24,000.00 due him from the sale of his land in Connecticut, he had the means with which to comply with the court's judgment. We have no way of knowing what the annual payments would be on the refinanced loan, but surely terms at least as favorable as the original loan could be obtained.

Defendant does not contend that plaintiff could pay the balance due on the mortgage or make the payments, and obviously she is not financially able to do so. We hold that the order requiring defendant to pay the taxes and the mortgage on the family home is reasonable. It merely requires defendant to do what he ought to do, and it will not be disturbed.

We next consider the court's requirement that defendant pay plaintiff alimony in the amount of $300.00 per month ($3,600.00 annually) and child support of $200.00 a month for the three children under 18 years of age ($7,200.00 annually) a total of $10,800.00 annually.

The trial judge found that plaintiff and the children need approximately $1,900.00 a month or $22,800.00 annually. Presumably, this finding was based upon plaintiff's estimated budget submitted as her Exhibit 1, which shows the family's needs as $24,757.34, a figure which included house payments of $3,000.00 and taxes in the amount of $634.14. Defendant's esti-

mated family budget shows that the family needs $1,174.27 monthly or $14,091.24 yearly. The major items of difference in the budgets are (1) plaintiff's budget projects $1,000.00 annually for vacation and travel while defendant projects only $300.00; (2) plaintiff's budget estimates clothing expense as $2,500.00 annually for which defendant only allows $1,800.00; (3) plaintiff projects $2,000.00 as necessary for domestic employees whereas defendant contends only $1,200.00 annually is required; (4) plaintiff estimates food and milk expenses as $3,500.00 annually or as $291.00 monthly, while defendant estimates these expenses as $2,640.00 annually or as $220.00 monthly; (5) plaintiff projects $2,250 annually or $188.00 monthly for automobile operating expenses; defendant projects no amount for this; (6) plaintiff projects $1,200.00 annually for house repair and maintenance while defendant projects $180.00; and (7) plaintiff also includes expenses of $868.00 for entertainment and beauty shops which defendant does not include. These expenses do not appear to have been consistent with the parties' accustomed standard of living prior to their separation. In our view they are now certainly unrealistic and must be reduced.

The only evidence of defendant's needs is his own testimony in explanation of his Exhibit 2. In that statement he estimated his monthly expenses at $1,789.00 as follows: rent, $190.00; utilities, $35.00; food, $100.00; laundry and dry cleaning, $35.00; insurance (life, health, house, auto, income loss), $210.00; medical expenses, $40.11; clothing, $60.00; recreation, $30.00; telephone, $45.00; property taxes, $60.00; contributions, $25.00; State income taxes, $40.00; interest, $200.00; children's education, $300.00; federal income taxes, $150.00; car payments, $204.00; children's incidentals, $65.00.

While some of these items appear to be extravagant, or overestimated, and several might be eliminated, others are essential. Thus, if only the projected monthly rent ($190.00); food ($100.00); utilities ($35.00) and car payments ($204.00) are counted, defendant would still need $529.00 monthly ($6,348.00 annually) to support himself. However, income taxes, automobile insurance, and laundry must be paid; most certainly he will have medical expenses and other unexpected demands for money from time to time. Even so, his projected monthly expenditures of $1,789.00 are beyond his means. We note that considered on an annual basis these expenses exceed defendant's total maximum income as found by the trial court.

Beall v. Beall

In view of the needs, income and assets of the parties, the trial judge's order requiring defendant to make annual payments of $10,800.00 for alimony and child support and at least $627.00 in property taxes (a total of $11,427.00) in addition to satisfying or refinancing the $24,000.00 mortgage is unrealistic and beyond defendant's ability. According to the court's findings, defendant's income before taxes is from $14,000.00 to $18,000.00. Assuming the maximum of $18,000.00, after making the payments ordered by the court, defendant could not meet his own necessary expenses. The order requires that defendant not only exhaust his entire income but that he apply his accumulated capital to its satisfaction. The payments ordered, plus possession of the house, rent free and relieved of the mortgage payments, would enable plaintiff and the children to maintain a relatively high standard of living while reducing defendant to poverty.

As we said in *Sayland v. Sayland, supra,* the question of the correct amount of alimony and child support is a question of fairness to all parties. We hold that, under present conditions, the payments required of defendant impose too great a burden and are unfair to him. If defendant's income or estate increases, he should contribute proportionately to the needs of his wife and children. Until then more realistic payments must be ordered. The awards of alimony and child support are therefore vacated, and the district court is directed to reconsider and redetermine these amounts in light of this opinion and the parties' present circumstances.

Unfortunately, we cannot end this opinion here. An affidavit of plaintiff, filed by her counsel with this Court on 23 September 1976, asserts (1) that since October 1975 defendant had paid her no alimony and (2) that defendant has wilfully failed and refused either to pay the present outstanding mortgage on the homeplace of the parties or to arrange refinancing of the obligation; (3) that he has also refused to pay the 1975 ad valorem taxes on the property; (4) that she is informed, believes, and alleges that at all material times defendant has been able to meet these obligations; (5) that on 1 September 1976 the mortgagee of the homeplace filed a petition for an order of foreclosure with the Clerk of the Superior Court of Guilford County (File No. 76-SP-1153), in which it was alleged that the mortgage is in default; (6) that plaintiff has obtained a commitment from High Point Bank and Trust Company to

refinance the property in order to prevent its loss by foreclosure; that defendant has refused to sign the note and deed of trust and to cooperate in any respect; (7) that plaintiff is unable to make the necessary financial arrangements to save the property. Because the district court is without jurisdiction to entertain a motion for contempt of court during the pendency of the appeal, plaintiff prays that this Court order defendant to show cause why he should not be attached as for contempt of court.

[3] Plaintiff correctly asserts that the district court was divested of jurisdiction by the appeal. "The appeal stays contempt proceedings until the validity of the judgment is determined." *Joyner v. Joyner*, 256 N.C. 588, 124 S.E. 2d 724 (1962). However, as we also said in *Joyner*, "But taking an appeal does not authorize a violation of the order. One who wilfully violates an order does so at his peril. If the order is upheld by the appellate court, the violation may be inquired into when the case is remanded to the [trial] court." *Id.* at 591, 124 S.E. 2d at 727.

[4] We have now upheld the trial court's order that defendant pay the taxes and pay or refinance the mortgage on the home occupied by his wife and children as these obligations become due. It would seem that the natural feelings of a father for his children, as well as minimum fiscal responsibility, would have caused him to make every effort to prevent the loss of their home (worth approximately $64,000.00) by foreclosure. Instead, defendant seems to have deliberately invited foreclosure when, according to the record on appeal and plaintiff's affidavit of September 23rd, he was able to make the payments or arrangements which would prevent foreclosure. The information in plaintiff's affidavit that for one year defendant's resources have not been impaired by the payment of any alimony whatever makes his failure to pay the liens on the home even more incomprehensible.

Assuming the truth of plaintiff's affidavit, defendant is prima facie in contempt of court for failure to pay these liens, and he can purge himself only by paying the mortgage or by making arrangements which will stop the foreclosure and maintain the title to the property *in statu quo*. If perchance defendant's plan is to let the property be foreclosed so that he may acquire it freed of any claim by plaintiff as a tenant by the entirety, that will not do.

This cause, including plaintiff's motion that defendant be adjudged in contempt of court, is returned to the Court of Appeals with instructions that it be certified at once to the District Court of Guilford County to the end that the District Court may immediately inquire into the facts averred in the motion. The Clerk of the Supreme Court will forward copies of this opinion to counsel for the parties.

In accordance with this opinion the decision of the Court of Appeals is

Reversed in part; affirmed in part.