IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-1102

 Filed: 3 October 2017

Forsyth County, No. 13 CVD 4122

JENNIFER CLELAND GREEN, Plaintiff,

 v.

STANLEY BOYD GREEN, Defendant.

 Appeal by Defendant from judgment and order entered 22 February 2016 and

2 March 2016 by Judge Lillian B. Jordan in District Court, Forsyth County. Heard

in the Court of Appeals 15 May 2017.

 Bell, Davis & Pitt P.A., by Robin J. Stinson, for Plaintiff-Appellee.

 Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson, for Defendant-
 Appellant.

 McGEE, Chief Judge.

 Stanley Boyd Green (“Defendant”) appeals from an equitable distribution order

and judgment that, inter alia, classifies compensation he received as a part owner of

a law firm as “deferred compensation,” and thus divisible property pursuant to N.C.

Gen. Stat. § 50-20. Defendant also appeals from an alimony order and judgment

requiring him to pay $6,000.00 per month in alimony to his former wife, Jennifer

Cleland Green (“Plaintiff”). We reverse the alimony order and portions of the

equitable distribution order, and remand for further proceedings.
 GREEN V. GREEN

 Opinion of the Court

 I. Background

 Plaintiff and Defendant married on 22 October 1994 and had four children

together. Plaintiff and Defendant separated on 25 June 2013. Plaintiff graduated

from law school in 1992 and worked as a law clerk at the North Carolina Court of

Appeals for two to three years. Defendant graduated from law school after the parties

were married, clerked for one year at the North Carolina Court of Appeals, and was

then hired by the Womble Carlyle Sandridge & Rice law firm in Winston-Salem in

1999. Prior to the parties’ separation, Plaintiff had not worked outside the home

since the birth of their first child in 1995, except for a few weeks writing subrogation

letters early in the couple’s marriage. The parties agreed in 2000 that Plaintiff’s law

license would become inactive, and Plaintiff has spent the last twenty years caring

for their children. After the parties separated in 2013, Plaintiff was employed part-

time and earned a net income of $1,505.98 per month.

 Defendant joined the firm of Strauch, Fitzgerald and Green (“the firm”) as a

founding partner in 2009 where Defendant was initially a twenty-five percent

shareholder. By the date of separation, Defendant was a 26.32 percent shareholder

and, after the date of separation, he became a forty percent shareholder when one of

the partners left the firm.1 The firm is a Subchapter C corporation and, as such,

shareholders are paid only when there are profits from which to pay them.

 1 The firm was subsequently renamed Strauch, Green and Mistretta.

 -2-
 GREEN V. GREEN

 Opinion of the Court

 In 2009, Jack Strauch (“Strauch”) brought to the firm a contingency fee case,

that arose out of a contract dispute from the 2010 Vancouver Winter Olympics. The

firm represented Cruise Connections, a U.S. corporation based in Winston-Salem,

against the Royal Canadian Mounted Police (the “Cruise case”). Though the Cruise

case had already been dismissed by the federal district court at the time the case was

brought to the firm, Defendant assisted Strauch with developing arguments on

appeal, and the firm obtained a reversal in the Cruise case in April 2010. See

generally Cruise Connections Charter Mgmt. 1, LP v. Attorney General of Canada, 600

F.3d 661 (D.C. Cir. 2010).

 After Plaintiff and Defendant separated, the firm obtained summary

judgment on liability in the Cruise case. Defendant, Strauch, and others in the firm

worked with experts, drafted pre-trial memoranda, developed motions in limine, and

participated in the damages trial. The firm obtained a $19.1 million verdict for its

client at trial. While the matter was on cross-appeal, the Cruise case settled in

mediation for $16.9 million in December 2014. The settlement yielded the firm a fee

of $5,492,500.00.

 Although the Cruise case was a contingency case, the firm kept detailed billing

records that showed members of the firm had worked 6,608 total billable hours on

the case. The hours logged prior to the separation of Plaintiff and Defendant totaled

5,159, being seventy-eight percent of the total billed hours. On 13 March 2015, under

 -3-
 GREEN V. GREEN

 Opinion of the Court

the firm’s compensation structure in existence in 2015, Defendant received a payment

of $1,909,277.00 from the Cruise case. After accounting for taxes, Defendant received

$992,844.00 of the Cruise case fee.

 Plaintiff filed a complaint against Defendant for child custody, child support,

divorce from bed and board and injunctive relief on 14 June 2013. Plaintiff filed a

second complaint on 2 July 2013 for equitable distribution, alimony, post-separation

support, and attorney’s fees. Defendant filed an answer and counterclaim in both

actions on 21 August 2013. The two actions were consolidated, and the issues of

equitable distribution and alimony were tried in January 2016. The trial court

entered an equitable distribution judgment and order (the “equitable distribution

order”) on 22 February 2016, and entered an alimony judgment and order (the

“alimony order”) on 2 March 2016.

 In determining the value of the firm on the date of separation and the current

value, the trial court relied on the testimony of Defendant’s expert, Betsy Fonvielle

(“Fonvielle”), who testified that the most appropriate valuation method was the

“capitalized returns” method. Fonvielle testified that the capitalized returns method

over-emphasized the impact of the Cruise case, so Fonvielle determined Defendant’s

interest in the current value of the firm by averaging the capitalized return figure

with the “direct market data calculation,” and determined the current value of the

firm to be $409,000.00 (the value the trial court found). The trial court also found

 -4-
 GREEN V. GREEN

 Opinion of the Court

that Defendant’s interest in the firm on the date of separation was $314,476.00. It

further determined that the $94,524.00 difference between the current value of

Defendant’s interest and the value of Defendant’s interest on the date of separation

was a “passive” increase and therefore divisible property subject to equitable

distribution. The trial court also found as fact that $636,575.00 of the income

Defendant received from the Cruise case was “divisible property” and constituted

“deferred compensation.”2 The trial court ordered half of that amount ($318,287.50)

to be paid to Plaintiff.

 The total marital estate was valued at $1,464,407.38. Pursuant to the

equitable distribution order, Plaintiff was ultimately awarded fifty-three percent of

the total marital estate, being $776,135.91, which included the payment from the

Cruise case compensation and a $154,076.57 distributive award. The marital home,

with a net value of $41,867.26 after accounting for appreciation in the home and

subtracting the mortgage still due on the home, was also distributed to Plaintiff as

sole owner. The mortgage balance on the marital residence was $368,448.74 and was

distributed to Plaintiff. Pursuant to the alimony order, Defendant was ordered to

pay permanent alimony of $6,000.00 per month. Defendant appeals.

 2 This amount was calculated by multiplying the net payment to Defendant of $992,844.00 by
the percent of work done by the entire firm on the case prior to the separation (78%), being $774,418.00.
Defendant’s pre-separation ownership interest in the firm (26.32%) was then multiplied by the
expected Cruise case fee used to determine the date of separation value of the firm using the capitalized
returns method ($523,723.00). This number, $137,844.00, was subtracted from $774,418.00, thus
calculating “the divisible property portion” of the Cruise case fee to be $636,575.00.

 -5-
 GREEN V. GREEN

 Opinion of the Court

 II. Analysis

 Defendant argues the trial court erred by: (1) classifying the Cruise case

compensation as deferred compensation, a type of marital property pursuant to

N.C.G.S. § 50-20(b)(1); (2) classifying the Cruise case compensation as divisible

property pursuant to N.C.G.S. § 50-20(b)(4)(b); (3) incorrectly valuing Defendant’s

interest in the firm and distributing the post-separation increase in the value of the

firm; (4) concluding as a matter of law that the entire increase in value of the firm

from the date of separation to the date of distribution was a passive increase, and

thus divisible property; (5) failing to order Plaintiff to remove Defendant from the

note and deed of trust on the marital home; (6) ordering an unequal distribution

funded by a distributive award where there was no evidence Defendant had the liquid

funds and ability to pay the distributive award or that the presumption of an in-kind

distribution was rebutted; and (7) determining the amount of alimony to be awarded

to Plaintiff, and Defendant’s ability to pay that amount.

 A. Classification of the Cruise Case Compensation

 Defendant argues the trial court erred by classifying the income he received

from the firm as a result of the Cruise case settlement as both divisible property and

deferred compensation.

 It is well settled in this jurisdiction that when the trial
 court sits without a jury, the standard of review on appeal
 is whether there was competent evidence to support the
 trial court’s findings of fact and whether its conclusions of

 -6-
 GREEN V. GREEN

 Opinion of the Court

 law were proper in light of such facts. While findings of
 fact by the trial court in a non-jury case are conclusive on
 appeal if there is evidence to support those findings,
 conclusions of law are reviewable de novo.

Lee v. Lee, 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004) (internal quotations

omitted). It is also well settled that “[q]uestions of statutory interpretation are

ultimately questions of law for the courts and are reviewed de novo.” In re Summons

of Ernst & Young, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citation omitted).

 Pursuant to N.C. Gen. Stat. § 50-20, the trial court in an equitable distribution

case “shall . . . provide for an equitable distribution of the marital property and

divisible property between the parties[.]” N.C. Gen. Stat. § 50-20(a) (2015). As

relevant here, marital property includes “all vested and nonvested pension,

retirement, and other deferred compensation rights[.]” N.C.G.S. § 50-20(b)(1) (2015).

Divisible property, as relevant to the present case, is defined as:

 all real and personal property [including] [a]ll property,
 property rights, or any portion thereof received after the
 date of separation but before the date of distribution that
 was acquired as a result of the efforts of either spouse
 during the marriage and before the date of separation,
 including, but not limited to, commissions, bonuses, and
 contractual rights.

N.C. Gen. Stat. § 50-20(b)(4)(b) (2015).

 In the equitable distribution order in the present case, the trial court found as

fact that “a portion of the Cruise Case fee received by [Defendant] after the date of

separation is divisible property separate from the value of [t]he [f]irm and is

 -7-
 GREEN V. GREEN

 Opinion of the Court

considered by the [c]ourt as deferred compensation for work performed during the

marriage.” (emphasis added). We initially note that the trial court appears to have

found the Cruise case compensation to be both divisible property, pursuant to

N.C.G.S. § 50-20(b)(4)(b), and deferred compensation, a type of marital property

pursuant to N.C.G.S. § 50-20(b)(1). The “classification of property in an equitable

distribution proceeding requires the application of legal principles,” and we therefore

review de novo the classification of property as marital, divisible, or separate.

Romulus v. Romulus, 215 N.C. App. 495, 500, 715 S.E.2d 312 (2011) (citation

omitted). The Cruise case compensation cannot be both marital and divisible

property and, as such, we inquire separately into whether the income is appropriately

classified as deferred compensation or divisible property.

 1. Deferred Compensation

 The present case represents the first occasion North Carolina Courts have had

to consider whether a contingent fee, collected after the date of separation but where

the contract under which the contingent fee was earned was entered into during a

marriage, qualifies as “deferred compensation” for the purposes of equitable

distribution under N.C.G.S. § 50-20(b)(1). We first consider the text of the statute,

which provides that “[m]arital property includes all vested and nonvested pension,

retirement, and other deferred compensation rights.” N.C.G.S. § 50-20(b)(1). The

statute does not define the term “deferred compensation,” and we therefore must

 -8-
 GREEN V. GREEN

 Opinion of the Court

employ methods of statutory construction in order to discern the intent of the General

Assembly in drafting the statute. See Stevenson v. Durham, 281 N.C. 300, 303, 188

S.E.2d 281, 283 (1972) (“The primary rule of statutory construction is that the intent

of the legislature controls the interpretation of a statute.”).

 One cannon of statutory construction employed by our Courts is ejusdem

generis, which states that “where general words follow a designation of particular

subjects or things, the meaning of the general words will ordinarily be presumed to

be, and construed as, restricted by the particular designations and as including only

things of the same kind, character and nature as those specifically enumerated.”

State v. Fenner, 263 N.C. 694, 697-98, 140 S.E.2d 349, 352 (1965); see also Knight v.

Town of Knightdale, 164 N.C. App. 766, 769, 596 S.E.2d 881, 884 (2004). Applying

the cannon to the present case, we discern that the General Assembly meant for

“deferred compensation,” a general phrase, to include only items “of the same kind”

as those words which come before it in N.C.G.S. § 50-20(b)(1). We do not believe a

spouse’s share of a contingent fee earned by virtue of the spouse’s ownership interest

in a law firm is “of the same type” as vested and nonvested pensions and retirement

accounts, which suggests the General Assembly did not mean to include contingency

fees to be included in the term “deferred compensation” in N.C.G.S. § 50-20(b)(1).

 Also considering dictionary definitions leads to the same result. A contingent

fee is defined as “[a] fee charged for a lawyer’s services only if the lawsuit is successful

 -9-
 GREEN V. GREEN

 Opinion of the Court

or is favorably settled out of court.” BLACK’S LAW DICTIONARY 338 (8th ed. 2004)

(emphasis added). Deferred compensation, on the other hand, “generally refers to

money which, by prior arrangement, is paid to the employee in tax years subsequent

to that in which it is earned.” Michael J. Canan, Qualified Retirement and Other

Employee Benefit Plans § 1.6 (West 1994) (emphasis added); see also BLACK'S LAW

DICTIONARY 421 (6th ed. 1990) (defining “deferred compensation” as “compensation

that will be taxed when received and not when earned”). Defendant received the

Cruise case fee only after the lawsuit was favorably settled out of court, and

Defendant received the income in the year in which it was earned and after the date

of the parties’ separation.

 “[A]s a general matter, retained earnings of a corporation are not marital

property until distributed to the shareholders.” Allen v. Allen, 168 N.C. App. 368,

375, 607 S.E.2d 331, 336 (2005). “[F]unds received after the separation may

appropriately be considered as marital property when the right to receive those funds

was acquired during the marriage and before the separation[.]” Hill v. Hill, __ N.C.

App. ___, ___, 781 S.E.2d 29, 40 (2015) (quotation omitted). Because the Cruise case

had not been settled at the time of the parties’ separation, Defendant had no right to

any income from the Cruise case at that time.

 Even if the Cruise case compensation was properly classified as deferred

compensation, under N.C.G.S. § 50-20.1(d), an award of deferred compensation is

 - 10 -
 GREEN V. GREEN

 Opinion of the Court

based on the accrued benefit calculated as of the date of separation. In the present

case, Defendant had no accrued benefit at the date of the parties’

separation – Defendant was not entitled to any payment from his or the firm’s work

on the Cruise case that had not yet been settled and would not be settled until months

after the parties separated.

 In Musser v. Musser, 909 P.2d 37 (Okla. 1995), the Oklahoma Supreme Court

confronted the precise question we confront in this case: whether a husband’s interest

in a contingency fee case was marital property. In holding it was not, that court

stated:

 [A]n attorney is not entitled to receive payment for services
 rendered unless the client succeeds in recovering money
 damages. For this reason, we conclude that because [the
 h]usband in the case at bar is not certain to receive
 anything under the contingency fee contracts, those
 contingency fee cases should not be considered marital
 property. At most, [the h]usband has a potential for
 earning income in the future. He is not assured of earning
 anything for his efforts nor does he acquire a vested
 interest in the income from those cases unless his client
 recovers, an event impossible to accurately predict.
 Therefore, we deem pending contingency fee cases of a law
 firm to be future income and not a part of the marital
 assets.

Id. at 40 (emphasis omitted). We agree with the reasoning of the Oklahoma Supreme

Court. At the time Plaintiff and Defendant separated, Defendant and the firm were

not certain to recover anything from the Cruise case. At most, Defendant had the

 - 11 -
 GREEN V. GREEN

 Opinion of the Court

potential to earn income from the case in the future. Therefore, the Cruise case

compensation was not deferred compensation.

 2. Divisible Property

 In addition to classifying the Cruise case compensation as deferred

compensation, the trial court also classified it as divisible property. As noted,

divisible property

 means all real and personal property [including] [a]ll
 property, property rights, or any portion thereof received
 after the date of separation but before the date of
 distribution that was acquired as a result of the efforts of
 either spouse during the marriage and before the date of
 separation, including, but not limited to, commissions,
 bonuses, and contractual rights.

N.C.G.S. § 50-20(b)(4)(b). Plaintiff argues the Cruise case compensation received by

Defendant after the date of separation is divisible property because, pursuant to

N.C.G.S. § 50-20(b)(4)(b), divisible property includes contractual rights. Plaintiff

argues that the rights under the Cruise contingent fee contract “are divisible property

to the extent of pre-separation labor pursuant to the contract.” As explained above,

however, Defendant did not acquire any right to receive income from the Cruise case

prior to the date of the parties’ separation. In addition, the contingency fee contract

was between the firm and its client, not between Defendant and the client. Plaintiff

provides no case law, and we have found none, holding that legal fees earned on a

contingency basis should be considered under the contractual rights clause of

N.C.G.S. § 50-20(b)(4)(b).

 - 12 -
 GREEN V. GREEN

 Opinion of the Court

 On appeal, Plaintiff raises a new argument not considered by the trial court as

to why the Cruise case compensation was properly classified as divisible property.

Plaintiff argues the Cruise case compensation is appropriately considered a bonus,

making it a type of divisible property pursuant to N.C.G.S. § 50-20. “A bonus is

something given in addition to what is ordinarily received by, or strictly due to, the

recipient.” Pugh v. Scarboro, 200 N.C. 59, 62, 156 S.E.2d 149, 150 (1930); see also

BLACK’S LAW DICTIONARY 194 (8th ed. 2004) (defining “bonus” as “[a] premium paid

in addition to what is due or expected”). The income Defendant received from the

Cruise case was not a premium paid to the firm in addition to the money that was

due to it; rather, the Cruise case compensation was the compensation Defendant

received by virtue of his ownership interest in the firm. The trial court erred in

determining that the Cruise case compensation was divisible property, and that

compensation is thus appropriately labeled as separate property of Defendant.

 Given our determination that the Cruise case compensation is separate

property, we decline to address Defendant’s remaining arguments regarding the

Cruise case compensation, including whether the trial court appropriately found that

the increase in the firm’s value was “passive” and therefore divisible pursuant to

N.C.G.S. § 50-20(b)(4)(a). In viewing the Cruise case compensation as separate

property, on remand the trial court will consider anew whether there was an increase

in the firm’s value and, if so, again consider whether that increase was “passive” or

 - 13 -
 GREEN V. GREEN

 Opinion of the Court

“active.” We express no opinion on the matter, and leave it to the trial court’s

determination.

 B. Distribution of the Mortgage Debt

 Defendant argues that the trial court erred by failing to distribute the

mortgage debt to Plaintiff by not ordering Plaintiff to remove Defendant’s name from

the promissory note and deed of trust for the marital residence. We first note that

Defendant never requested that the trial court order Plaintiff to refinance the existing

mortgage, and offered no evidence that Plaintiff had the ability to refinance the

existing mortgage in her name alone. Because Defendant failed to argue to the trial

court that his name must be removed from the note and deed of trust, he has waived

appellate review of the issue. See, e.g., Bowles Auto., Inc. v. NC DMV, 203 N.C. App.

19, 29, 690 S.E.2d 728, 734 (2010) (holding that an appellant “waived appellate

review” of an issue due to its failure to raise that issue at trial).

 Even assuming the issue was not waived, we hold that the trial court did not

fail to distribute the mortgage debt.

 Equitable distribution is vested in the discretion of the trial
 court and will not be disturbed absent a clear abuse of that
 discretion. Only a finding that the judgment was
 unsupported by reason and could not have been a result of
 competent inquiry, or a finding that the trial judge failed
 to comply with the statute will establish an abuse of
 discretion.

 - 14 -
 GREEN V. GREEN

 Opinion of the Court

Wiencek-Adams v. Adams, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (citations

omitted).

 Defendant cites Khajanchi v. Khajanchi, 140 N.C. App. 552, 537 S.E.2d 845

(2000), which states that “the [trial] court must distribute the marital property and

debts.” Id. at 557, 537 S.E.2d at 849. Since Defendant’s name remains on the note

and deed of trust, Defendant argues, he would be liable should Plaintiff fail to pay

the mortgage. We hold that the trial court did not abuse its discretion in ordering

Plaintiff to pay the note and deed of trust, but not ordering Plaintiff to have

Defendant’s name removed from those documents and secure a new loan in her name

only. We find no merit in Defendant’s argument that the trial court failed to

distribute the mortgage debt as part of the equitable distribution judgment. The trial

court clearly distributed the debt owed on the marital home to Plaintiff. Finding of

fact 34 of the trial court’s order states that “[t]he . . . mortgage on the marital

residence . . . had a balance of $364,448.74 on the date of separation. This debt is

distributed to [Plaintiff].”

 While Defendant argues that the trial court erred by failing to distribute the

mortgage debt at all, he actually takes issue with the method in which the mortgage

debt was distributed. But Defendant has failed to make that argument in his brief

to this Court. In his brief, Defendant only argues that the trial court “in

actuality . . . failed to” distribute the mortgage to Plaintiff, although it “found it was

 - 15 -
 GREEN V. GREEN

 Opinion of the Court

distributing the mortgage to Plaintiff.” Therefore, any argument that the trial court

erred in the method in which it distributed the mortgage debt was abandoned by

Defendant’s failure to raise it in his brief. N.C.R. App. P. 28(a) (“Issues not presented

and discussed in a party’s brief are deemed abandoned.”).

 Even if the issue were not abandoned, Defendant cites no authority requiring

that a trial court order a party receiving the marital home in an equitable distribution

action to refinance the mortgage debt to have the other party removed from the note

and deed of trust. In the present case, the trial court heard testimony about the

valuation of the marital residence at the time it was purchased in 2006, as well as

the valuation of the residence at the time of separation. The trial court also heard

testimony regarding the remaining balance on the mortgage at the time of trial, and

the monthly mortgage payment for principal, interest, taxes, and insurance.

 The trial court’s order clearly shows that it took these factors into account in

distributing the marital property and debts. The equitable distribution order

includes a lengthy discussion of the marital property, including the differing

valuations of the property, each parties’ contentions about the valuations, and the

balance of the mortgage. The trial court then specifically ordered that “[t]he marital

residence [is] distributed to [] Plaintiff,” and that Plaintiff was “distributed a net

value of $41,867.26,” which took into account the remaining balance on the mortgage.

 - 16 -
 GREEN V. GREEN

 Opinion of the Court

 The order also mandated that Plaintiff “shall assume and pay in full according

to the terms of the present mortgage at Wells Fargo Mortgage that is a lien on [the

marital residence] until such time as she sells the residence or refinances it.”

(emphasis added). This portion of the order demonstrates that the trial court took all

of the relevant factors into account and determined that Plaintiff was to assume the

responsibility to pay the already existing mortgage on the residence, rather than

obtain a new mortgage. The record, transcript, and order combine to show that:

(1) Defendant never requested the trial court order Plaintiff to refinance the

mortgage; (2) Defendant did not offer any evidence that Plaintiff had the financial

resources to do so; (3) the trial court’s order included a notation that Plaintiff had

made all payments on the existing mortgage as of the date of the order; and (4) the

trial court carefully considered the evidence regarding the marital home and the

mortgage; thus, we decline to hold that the trial court’s decision “could not have been

the result of a reasoned decision.” State v. Wilson, 313 N.C. 516, 330 S.E.2d 450

(1985). “[E]quitable distribution is vested in the discretion of the trial court and will

not be disturbed absent a clear abuse of that discretion.” Adams, 331 N.C. at 691,

417 S.E.2d at 451 (citations omitted). We hold the trial court did not abuse its

discretion in distributing the mortgage debt.

 C. Available Liquid Funds for the Distributive Award

 - 17 -
 GREEN V. GREEN

 Opinion of the Court

 Defendant next argues the trial court erred by ordering an unequal

distribution of marital property because there was no evidence that he had the liquid

funds and ability to pay the distributive award. We disagree. When a distributive

award is ordered, the court must “make the required findings that defendant had

sufficient liquid assets from which to pay the distributive award.” Squires v. Squires,

178 N.C. App. 251, 267, 631 S.E.2d 156, 165 (2006). “If a party’s ability to pay an

award with liquid assets can be ascertained from the record, then the distributive

award must be affirmed.” Peltzer v. Peltzer, 222 N.C. App. 784, 791, 732 S.E.2d 357,

362 (2012). In the present case, there is plenary evidence in the record that

Defendant had sufficient liquid assets to pay the distributive award. The trial court

found that Defendant had separate assets3 which were valued at over $276,500.00,

in addition to a whole life insurance policy with a face value of $1,275,000.00, and an

investment portfolio with Northwestern Mutual with a balance of $1,275,268.80.

 Defendant further argues that there was no evidence that the presumption of

an in-kind distribution was rebutted.

 It shall be presumed in every action that an in-kind
 distribution of marital or divisible property is equitable.
 This presumption may be rebutted by the greater weight of
 the evidence, or by evidence that the property is a closely
 held business entity or is otherwise not susceptible of
 division in-kind. In any action in which the presumption is
 rebutted, the court in lieu of in-kind distribution shall
 provide for a distributive award in order to achieve equity

 3 These assets include a new home in which he invested $40,000.00, a boat worth $60,000.00
with $10,000.00 equity, 27 guns, 100 knives, and a separate retirement plan worth over $107,000.00.

 - 18 -
 GREEN V. GREEN

 Opinion of the Court

 between the parties. The court may provide for a
 distributive award to facilitate, effectuate or supplement a
 distribution of marital or divisible property. The court may
 provide that any distributive award payable over a period
 of time be secured by a lien on specific property.

N.C. Gen. Stat. § 50-20(e) (emphasis added). In the present case, the presumption is

rebuttable because Defendant’s interest in the firm is a closely-held business interest,

and the trial court found that, due to the nature of some of the marital property, it

was impractical for an in-kind distribution. While the trial court specifically referred

to the presumption as “not rebutted,” we find the trial court’s statement is harmless

error because the court proceeded to find that an in-kind distribution was impractical

and thus rebuttable under the statute. We affirm the trial court’s determination that

the distribution was not susceptible to division in-kind, and that Defendant had

sufficient liquid assets to pay the distributive award.

 D. Defendant’s Ability to Pay Alimony

 Defendant argues that the trial court’s findings of fact are insufficient for this

Court to review his ability to pay alimony. Whether a spouse is entitled to an award

of alimony is a question of law, which we review de novo. Collins v. Collins, ___ N.C.

App. ___, ___, 778 S.E.2d 854, 856 (2015). “The amount of alimony is determined by

the trial judge in the exercise of his sound discretion and is not reviewable on appeal

in the absence of an abuse of discretion.” Quick v. Quick, 305 N.C. 446, 453, 290

S.E.2d 653, 658 (1982). Defendant contends the trial court failed to make a finding

 - 19 -
 GREEN V. GREEN

 Opinion of the Court

of fact regarding his current actual income – a required finding before using prior

years’ income to determine whether he had the ability to pay the alimony award.

 “Alimony is ordinarily determined by a party’s actual income, from all sources,

at the time of the order.” Kowalick v. Kowalick, 129 N.C. App. 781, 787, 501 S.E.2d

671, 675 (1998) (citation and emphasis omitted). As this Court has previously held:

 Unless the [trial] court finds that a supporting spouse is
 deliberately depressing his income in disregard of his
 marital obligation to provide reasonable support, and
 applies the “capacity to earn” rule, a supporting spouse’s
 ability to pay alimony is ordinarily determined by his
 income at the time the award is made.

Whedon v. Whedon, 58 N.C. App. 524, 527, 294 S.E.2d 29, 32 (1982) (emphasis

omitted); see also Megremis v. Megremis, 179 N.C. App. 174, 182, 633 S.E.2d 117, 123

(2006) (“Ordinarily, alimony is determined by a party’s actual income at the time of

the alimony order. It is well-established that a trial court may consider a party’s

earning capacity only if the trial court finds the party acted in bad faith.” (citations

omitted)).

 In the present case, the trial court made the following findings of fact regarding

Defendant’s income and ability to pay:

 24. [Defendant] is one of two owners of his law firm and
 his gross monthly income in 2014 averaged
 $24,333.00. In 2015 his monthly income averaged
 $42,458.00 (excluding a contingency fee payment he
 received in the Spring of 2015.) His affidavit lists
 his average gross monthly income as $23,280.00.
 Using the averages on his end of year income
 statements for 2014 and 2015 for mandatory

 - 20 -
 GREEN V. GREEN

 Opinion of the Court

 deductions, the [c]ourt finds that his average gross
 monthly income for 2014 and 2015 was $33,395.00
 His average monthly mandatory deductions were
 $14,012.00 and his net wages were $19,383.00.

25. [Defendant] has an investment account at
 Northwestern Mutual that had an investment total
 as of December 16, 2015 of $1,275,268.80. The
 parties stipulated that $916,433.00 is owed in
 federal and state taxes on the very large contingency
 fee [Defendant] received after the date of separation
 which the [c]ourt ruled was part divisible property
 in the [e]quitable [d]istribution case.

....

35. The [c]ourt finds that an appropriate gross amount
 for [Defendant] to pay [Plaintiff] as alimony is the
 sum of $6,000.00 per month. This sum is reasonable
 and necessary to provide [Plaintiff] with the funds
 needed to meet her reasonable needs according to
 her accustomed standard of living. Defendant has
 the means and ability to pay alimony of $6,000.00
 per month to Plaintiff.

36. Defendant offered evidence showing, if he earns
 $330,146.00 annually (as opposed to $400,000.00
 annually) if he pays $5300.00 in taxable alimony per
 month, and he pays $3184.00 per month in child
 support, he will have $9,304.00 per month to meet
 his own living expenses.

....

39. Based upon the factors set forth in [N.C. Gen. Stat.
 §] 50-16.3A and the [c]ourt’s discretion, the award of
 alimony as ordered herein is equitable under the
 circumstances of this case.

 - 21 -
 GREEN V. GREEN

 Opinion of the Court

 40. [Defendant] has the ability to pay the support
 ordered herein.

While the alimony order contained findings of fact on Defendant’s 2014 and 2015

gross monthly income, and found as fact that Defendant’s “affidavit lists his average

gross monthly income as $23,280.00,” the order contained no ultimate finding of fact

establishing Defendant’s income “at the time the award [was] made.”

 Plaintiff cites Zurosky v. Shaffer, 236 N.C. App. 219, 763 S.E.2d 755 (2014) and

Diehl v. Diehl, 177 N.C. App. 642, 630 S.E.2d 25 (2006), contending that the trial

court may “use an average of [the supporting spouse’s] prior years’ income” when “the

trial court does not have sufficient information to determine actual income.” While

the Court in both Zurosky and Diehl did use a supporting spouse’s prior years’ income

to determine whether he had the ability to pay alimony, both of those cases are

distinguishable from the present case.

 In Zurosky, the trial court noted that the supporting spouse reported in his

financial affidavits a $16,000.00 monthly deficit between his income and expenses,

but “expressed concerns about the credibility of the evidence presented by [the

supporting spouse] concerning his income.” Zurosky, 236 N.C. App. at 230, 763

S.E.2d at 762. Therefore, the trial court “relied on prior years’ incomes rather than

[the supporting spouse’s] testimony concerning” his current actual income. Id. In

determining the trial court did not err in relying on previous years’ incomes, this

Court noted several findings of fact in the trial court’s order in which the court

 - 22 -
 GREEN V. GREEN

 Opinion of the Court

explained why it “did not find [the supporting spouse’s] reported income to be

credible[.]” Id. at 243, 763 S.E.2d at 769-770.

 Similarly, in Diehl, the trial court used the supporting spouse’s prior years’

income because the trial court was not presented with “adequate information as to

[the supporting spouse’s] actual . . . income” at the time of the order. Diehl, 177 N.C.

App. at 650, 630 S.E.2d at 31. The trial court found the supporting spouse’s

representation of his actual income to be “highly unreliable,” which forced the trial

court to rely on previous years’ income. Id. at 650, 630 S.E.2d at 30.

 In the present case, unlike in Zurosky and Diehl, the trial court did not make

any findings of fact regarding Defendant’s current income at the time of the order,

but only found as fact that Defendant had submitted an affidavit listing his income

as $23,280.00 per month. Even if such findings had been made, the trial court did

not base its decision on whether Defendant had the ability to pay alimony with

Defendant’s current income. Instead, the trial court based that decision on an

average of Defendant’s two prior years’ income. But the trial court did not make

findings of fact as to whether Defendant’s professed actual income at the time of the

order was reliable or unreliable before basing its decision regarding Defendant’s

ability to pay alimony on an average of prior years’ income. Averaging the prior years’

 - 23 -
 GREEN V. GREEN

 Opinion of the Court

income to determine Defendant’s ability to pay alimony resulted in a monthly gross

income that was $10,115.00 higher than Defendant’s reported monthly gross income.4

 Consistent with this Court’s precedents, we hold the trial court abused its

discretion in basing its decision regarding Defendant’s ability to pay alimony on an

average of Defendant’s monthly gross income from prior years without first

determining Defendant’s current monthly income, and whether that reported current

income was credible. Accordingly, the alimony order must be reversed. On remand,

the trial court must make findings of fact regarding Defendant’s “actual income, from

all sources, at the time of the order,” Kowalick, 129 N.C. App. at 787, 501 S.E.2d at

675, and may only use prior years’ incomes if the trial court finds as fact that

Defendant’s actual income is not credible, or is otherwise suspect. Zurosky, 236 N.C.

App. at 230, 763 S.E.2d at 762; Diehl, 177 N.C. App. at 650, 630 S.E.2d at 31.

 III. Conclusion

 We reverse the trial court’s order classifying the Cruise case compensation as

deferred compensation and divisible property. The Cruise case compensation is

separate property of Defendant under the circumstances present in this case. This

case is remanded for further proceedings regarding equitable distribution. We

decline to address Defendant’s additional arguments regarding the valuation and

 4 Defendant’s average gross monthly income for 2014 and 2015, as found by the trial court,
was $33,395.00, while his reported monthly gross income for those years was $23,280.00, for a
difference of $10,115.00.

 - 24 -
 GREEN V. GREEN

 Opinion of the Court

distribution of the property related to the firm. Correctly viewing the Cruise case

compensation as separate property, the trial court should determine anew whether

there was an increase in the value of the firm, and whether any such increase was

passive or active.

 The alimony order is also reversed and remanded for further proceedings, as

the trial court must determine Defendant’s current actual income before deciding his

ability to pay alimony on an average of his income from prior years.

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

 Judge INMAN concurs.

 Judge TYSON concurs with separate opinion.

 - 25 -
 No. COA16-1102– Green v. Green

 TYSON, Judge, concurring.

 I fully concur to reverse and to remand to the trial court. I agree the

contingency compensation proceeds from the Cruise case, distributed to Defendant,

were not deferred compensation. I also agree the compensation from the Cruise case

is separate property of Defendant under the circumstances presented here. On

remand, the trial court should determine whether there was any increase in value of

Defendant’s law firm, and whether such increase, if any, was passive or active. I

agree this case should be remanded for further proceedings regarding equitable

distribution.

 I also concur with the majority’s holding and opinion that the alimony order

should be reversed and remanded for further proceedings in order for the trial court

to determine the amount of Defendant’s current actual income. The trial court should

do this before deciding his ability to pay alimony based upon the average of his income

from previous years.

 I write separately to further address Defendant’s argument that the trial

court’s order failed to distribute the mortgage debt on the marital residence to

Plaintiff.

 A. Distribution of Marital Residence

 Defendant argues the trial court failed to distribute the mortgage debt on the

marital home to Plaintiff. Defendant argues in his brief: “while the [c]ourt ordered

Defendant to deed over his interest in the property to Plaintiff, the trial court did not
 GREEN V. GREEN

 TYSON, J., concurring

order Plaintiff to remove Defendant from the note and deed of trust, instead merely

allowing her to assume the payments on the mortgage, and thus Defendant remains

liable on the marital debt.” I also disagree with Defendant’s characterization of the

trial court’s order.

 In contrast to Defendant’s reading of the order, the decretal portion of the order

states, in relevant part:

 4. Defendant shall execute a special warranty deed
 transferring all of his right, title and interest in the
 property located at 2733 Spring Garden Road, Winston
 Salem, NC to Plaintiff. Plaintiff’s attorney shall prepare
 and deliver to Defendant’s attorney said deed conveying
 Defendant’s interest in said property to Plaintiff and
 Defendant shall execute said deed within fifteen (15) days
 of receiving the deed from Plaintiff’s attorney. The
 divisible property value of $4,667.00 is also distributed to
 the Plaintiff. The Plaintiff shall assume and pay in full
 according to the terms of the present mortgage at Wells
 Fargo Mortgage that is a lien on said residence until such
 time as she sells the residence or refinances it. (Emphasis
 supplied.)

 ....

 13. At the request of the other party, each party shall
 execute and deliver any and all written instruments or
 documents reasonably necessary or desirable to effectuate
 the purposes and provisions of this Judgment and Order.

 ....

 15. The terms of this Judgment and Order are enforceable
 through the contempt powers of this court. Each party has
 the ability to seek enforcement of this Judgment at his or
 her respective election.

 2
 GREEN V. GREEN

 TYSON, J., concurring

 These provisions grant Defendant the authority and an enforcement

mechanism to seek his release from liability for the note. That is the only logical

reading to comport with the trial court’s intent that Plaintiff “shall assume and pay

in full the debt” on the residence. If Defendant’s name remains on the note, then the

trial court’s intent to distribute the asset and debt in full to Plaintiff and for Plaintiff

to “assume and pay in full” the mortgage would be a nullity, because the lender could

assert Defendant’s joint and several liability to pay the debt in full, if Plaintiff fails

to “assume and pay in full.” “Court judgments and orders ‘must be interpreted like

other written documents, not by focusing on isolated parts, but as a whole.’” Cleveland

Const., Inc. v. Ellis-Don Const. Inc., 210 N.C. App. 522, 535, 709 S.E.2d 512, 522

(2011) (citing Reavis v. Reavis, 82 N.C. App. 77, 80, 345 S.E.2d 460, 462 (1986)).

 The majority’s opinion states and correctly interprets the trial court’s order as

clearly distributing the debt owed on the marital residence to Plaintiff. Finding of

Fact 34 of the order states: “The . . . mortgage on the marital residence . . . had a

balance of $364,448.74 on the date of separation. This debt is distributed to

[Plaintiff].” (Emphasis supplied.) The court’s order does not just state Plaintiff shall

make payments on the mortgage, while Defendant remains fully liable, but that the

ownership of the asset and mortgage debt itself “is distributed to Plaintiff” and

expressly requires that Plaintiff “shall assume and pay in full.”

 “’To assume’ is defined by the lexicographers as ‘to take upon one’s self,’ ‘to

 3
 GREEN V. GREEN

 TYSON, J., concurring

undertake,’ ‘to adopt.’“ Lenz v. Chicago & N.W. Ry. Co., 111 Wis. 198, 86 N.W. 607,

609 (1901); see also Proctor Tr. Co. v. Neihart, 130 Kan. 698, 288 P. 574, 577 (1930)

(“‘Assume’ means ‘to take upon one’s self (to do or perform); to undertake.’” (citation

omitted)). “To pay, is . . . to discharge a debt, to deliver a creditor the value of a debt,

either in money or in goods, to his acceptance, by which the debt is discharged.” Beals

v. Home Ins. Co., 36 N.Y. 522, 527 (1867) (citations omitted).

 Here, the language of the trial court’s order expressly distributes the marital

residence equity and debt to Plaintiff, and requires Plaintiff “shall assume and pay

in full” the mortgage and debt on the marital residence. Construing “assume” and

“pay in full” together indicates Defendant has the power under the trial court’s order

to demand Plaintiff to have Defendant’s name removed from the note or otherwise

release Defendant from liability on the note. Otherwise, Plaintiff would assume the

mortgage, but not be responsible to “pay in full.” See Cleveland Const., 210 N.C. App.

at 535, 709 S.E.2d at 522 (stating court orders and judgments must be interpreted as

a whole).

 If any ambiguity exists in the trial court’s order, then upon remand, the trial

court should make the decretal section more definitive. “Whether ambiguity exists

in a court order is a question of law. . . .” Emory v. Pendergraph, 154 N.C. App. 181,

185, 571 S.E.2d 845, 848 (2002). This Court reviews questions of law de novo. N.C.

Dep’t of Env’t & Natural Res. v. Carroll, 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004).

 4
 GREEN V. GREEN

 TYSON, J., concurring

 Upon execution and recordation of the ordered special warranty deed,

conveying the marital residence to Plaintiff, all of Defendant’s right, title, and

interest in that collateral, including his equity of redemption of that property is

terminated. As long as Defendant’s name remains on the note, he is fully liable for

the entire debt. He must disclose that liability on his financial statements and credit

reports, with no continuing or offsetting interest in the underlying real property

asset, which serves as partial collateral to secure repayment of the debt. Plaintiff

and Defendant’s joint and several promise to pay remains part of the collateral for

repayment.

 No cases allow a trial court to purportedly grant one spouse sole ownership of

the marital residence, and to distribute responsibility to “assume and pay in full” the

mortgage debt, while requiring the other spouse to remain jointly and severally liable

for the balance on the note. Our Supreme Court in Beall v. Beall, 290 N.C. 669, 677

228 S.E.2d 407, 412 (1976), dealt with a divorce judgment that granted the wife

possession of the marital residence and required the husband to pay the mortgage

and taxes on the home. The Supreme Court found that portion of the divorce order

reasonable. Id. The Court in Beall did not require the husband to convey his entire

property interest in the marital residence to the wife, yet remain liable for the entire

debt.

 B. Conclusion

 5
 GREEN V. GREEN

 TYSON, J., concurring

 The majority’s opinion does not vacate or overturn the portions of the equitable

distribution order distributing the marital residence asset and debt to Plaintiff. The

order grants Plaintiff exclusive ownership of the marital residence and distributes

concurrent responsibility to “assume and pay in full” the debt thereon.

 On this marital residence distribution issue, the trial court’s decretal portion

of its order is supported by its findings of fact and conclusions of law, which allows

for Defendant’s liability under the note to be terminated or released by the lender

upon his execution and delivery of the special warranty deed. The trial court upon

remand should enforce the express language of the equitable distribution order to

require such release from the martial residence debt liability as a quid pro quo for

the conveyance of Defendant’s entire interest in the marital residence to Plaintiff.

 6